(No. 25245.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THEODORE PAVELICK, Plaintiff in Error.

*Opinion filed December 12, 1939—Rehearing denied Feb. 7, 1940.*

A. M. FITZGERALD, and WALTER T. DAY, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, C. EVERETT SMITH, State's Attorney, and A. B. DENNIS, (C. MARVIN HAMILTON, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Theodore Pavelick was convicted of the crime of burglary in the circuit court of Logan county and sentenced to imprisonment in the penitentiary. Joseph Dinora and Joseph Zrillic were indicted at the same time but tried separately. Pavelick has sued out this writ of error.

The evidence shows that the home of Homer J. Logue was burglarized on the night of March 14, 1936. It is located four and one-half miles west of Elkhart, in Logan county, on a gravel road. The evidence shows that about 8:15 P.M. on March 14, Pavelick procured Walter Tanke,

an acquaintance, to drive him from Springfield, Illinois, into the country to see a farmer about a job on a dairy farm. Before leaving Springfield, Pavelick had him pick up Dinora and Zrillic. Tanke drove them out on a rock road through the village of Fancy Prairie where he stopped at their direction and the three got out of the car on the open road. The driver returned to town.

The housekeeper in the Logue house had retired between 8:00 and 9:00 o'clock. Shortly after she retired she heard a noise and a man's voice telling her to go downstairs. After being given permission to dress, she went down the stairway ahead of him into the living-room. All the blinds were pulled down. Two of the men had dark handkerchiefs over their faces. There was another man, who was short, and who wore a long black overcoat that was so long that he kicked it out as he walked. He had a white handkerchief over his face and his cap pulled down. On inquiry from the men as to what time it was, she directed them to where there was a clock and it was found to be ten minutes after 10:00 o'clock. After being taken downstairs she was tied in a chair and blindfolded. The men talked in a foreign language. The safe and desk were ransacked and one of the men stood guard over her. After the men left she managed to leave the house with her hands still tied behind her and walked to the home of John Drake who got word to a deputy sheriff who arrived at the Logue home between 1:00 and 2:00 o'clock in the morning.

Shortly before 2:00 o'clock in the morning Theodore Pavelick, Dinora and another man, came to the home of Earl Constant, a farmer who lived about three and one-half miles by road from the Logue place. Constant knew Dinora well. They requested him to take them to Springfield and upon his refusal they telephoned and induced Tanke to drive out and bring them back to Springfield. Constant testified that Pavelick was the one who was doing

the telephoning and that he had on an extra long overcoat. When Tanke brought the men back to Springfield, they alighted together in the north part of the city and at that time Pavelick wore a long dark overcoat.

Dinora and Zrillic were arrested on the morning of March 16 and part of the property stolen from the Logue home was recovered. Officers then went to the home of Pavelick but he was not located until September, 1938, in California, from whence he was returned for trial. Evidence was also introduced showing the efforts made by the police and officers to find and apprehend Pavelick, to which objection was made by his counsel.

It is claimed that the evidence does not show plaintiff in error was guilty of burglary beyond a reasonable doubt and that nobody positively identified him as being present in the Logue home and that he was not seen, by any one who did identify him, closer than three and one-half miles from the Logue place. The evidence discloses that three men, among whom was plaintiff in error, went out in the country and got out of the machine on a country road. It also shows three men burglarized a dwelling-house within a short time thereafter. One of these men wore a coat so long for him that it was noticeable. Three men came to another farmhouse in the neighborhood and requested to be driven back to Springfield. They were the same three who left together, and one of them was positively identified as the plaintiff in error who had on a very long overcoat. They were driven by Constant to a nearby town and got out on the hard road. The same three men drove back to Springfield together with the same driver who first took them to the country, whom they had called by telephone from the farmhouse. Two of them went to their residences where they were later apprehended, but the third one, plaintiff in error, apparently did not stop when he left the car as it reached Springfield, but was finally apprehended in another State.

Two of these three persons were seized with the spoils of the burglary in their possession. Plaintiff in error stated to the driver that his mission in going to the country was to see a farmer about a job, but no farmer was produced on the trial to verify having been visited for such purpose. The fact that plaintiff in error wore a coat, when he stopped at Constant's house, similar to that worn by one of the burglars, was some proof of his presence at the scene of the crime. Sufficient time elapsed between the burglary and the arrival of Pavelick at Constant's house to give him time to walk from the Logue place to the Constant place. All of these circumstances, taken together, would justify a jury in believing that the three men who committed the burglary were the same three men who were shown to have been together both before and after the commission of the crime, although not in the immediate location of the house. There was no error in submitting this case to the jury, and its action in finding the defendant guilty is not contrary to law for want of sufficient evidence to prove the defendant guilty beyond a reasonable doubt.

Plaintiff in error also complains that the evidence of flight, and the instruction given by the court on that subject, constitute prejudicial error. Plaintiff in error discusses this question of flight as though the evidence showed a mere absence from his home or usual place of abode, whereas the proof clearly shows that plaintiff in error went out into the country where a burglary was committed and started back from the country about 2:00 o'clock A.M., and after having reached the north end of Springfield was never seen thereafter. Pavelick's association with the two other persons both before and after the burglary, and in its neighborhood, was sufficient to submit the question of his participation to the jury, and his leaving that neighborhood and remaining away indicates that the flight started from the scene of the crime rather than from his place of residence.

The case of *People* v. *Rischo,* 262 Ill. 596, does not apply because in that case no one identified the defendant as being the one who ran away from the scene of the crime. It was a question of identity and not a question of flight. In the present case, Pavelick was identified as *getting out* of the car before the burglary and getting into the car after the burglary. Neither is the case of *People* v. *Rappaport,* 362 Ill. 462, in point. In it we said that flight, unexplained, may permit an inference of guilt, and one of the grounds of reversal was the refusal of the court to permit the defendant to explain his flight. No such situation exists here. The instruction on flight, complained of by plaintiff in error, is not subject to the objection made that it singled out the absence of Pavelick from his home on the question of flight. As pointed out above, there was evidence other than the testimony of officers who visited his place of abode and found him absent, as it appears that an individual wearing the same kind of clothes as plaintiff in error was at the scene of the crime and, within a short time, not far from the place of the crime, and one like dressed departed, apparently without stopping at his place of abode. The instruction is substantially the same as the ones approved in *People* v. *Spaulding,* 309 Ill. 292, 307, and *People* v. *Herbert,* 361 id. 64, 73. The last case mentioned was reversed because there was no evidence of flight upon which to base the instruction, which is not the fact here. No error was committed by giving this instruction. We think the record shows, beyond a reasonable doubt, the guilt of the defendant.

The judgment of the circuit court of Logan county is affirmed.

*Judgment affirmed.*