**People of the State of Illinois, Plaintiff-Appellee, v. Nathaniel Geano Davis, Defendant-Appellant.**

**Gen. No. 51,846.**

First District, Second Division.

May 14, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of the crime of attempt burglary and was sentenced to a term of two to six years in the penitentiary. On this appeal he maintains that he was not proven guilty beyond a reasonable doubt because of unsatisfactory identification testimony.

Mrs. Rose Minerbrook testified that on January 26, 1966, she was the owner of a men's clothing business, known as Arvits Custom Clothes Incorporated, located in a building at 325 East 47th Street in Chicago, hereinafter referred to as the "Arvits building." The Arvits building was located on the south side of 47th Street, fronting on 47th Street, and was bounded on the west by the Chicago Transit Authority elevated train tracks, hereinafter referred to as the "L," and Calumet Avenue on the east. The front portion of the Arvits building appears to have been of the common store-front construction, a high, single story structure. It appears from the record that the rear portion of the Arvits building was substantially higher than the front portion, giving the rear portion a "two-story" appearance from the outside. Along an easterly portion of the south wall of the Arvits building stood a three-story apartment building fronting at 4710 Calumet Avenue, hereinafter referred to as the "Calumet building," the north wall of which apparently

abutted the easterly portion of the south wall of the Arvits building.

Mrs. Minerbrook testified that she was summoned to the store by the police about 4:00 on the morning of January 26, 1966, and that she searched the premises, found nothing missing, and returned home. When she returned to the store after 9:00 later that morning she secured a stepladder, searched the inside roof of the store above a false ceiling and observed a hole in the roof. She further testified that she went outside, ascended the steps of the "L" station and observed the hole and also snow which had been pushed away from the area of the hole. Mrs. Minerbrook stated that snow, which had accumulated on the false ceiling under the hole and which she failed to observe when she first observed the hole, melted a few days later and that the false ceiling suffered considerable water damage.

Police Officer Rudolph Winston testified that about 3:45 on the morning of January 26, 1966, he and his partner, Paul Harris, were parked in an unmarked squad car under the "L" tracks, some 30 to 40 feet behind and a little to the south of the Calumet building, acting on information that a holdup man was going to be in the area. The squad car was parked facing east and Officer Winston testified that he observed a man on the roof of the higher portion of the Arvits building. The man moved south, climbed onto the third-floor porch of the abutting Calumet building, descended the rear stairway, and proceeded toward the alley behind the building. As the man, later identified as Jerome Fuller, defendant's co-defendant at trial, reached the alley, the officers detained him and questioned him as to why he was on the roof. Fuller stated that someone had informed him that there were clothes on the roof of the Arvits building and that he was attempting to recover them. Fuller was then handcuffed and placed in the rear seat of the squad

450

car, the two officers sitting in the front, and the questioning continued.

A short while later, Officer Winston testified, he observed two more men on the roof of the higher portion of the Arvits building. One of the men wore a hat and a three-quarter length coat, and the other wore a beany-type cap and a black leather jacket. The men moved south on the roof of the Arvits building toward the Calumet building, climbed onto the roof of the Calumet building, lowered themselves through a skylight onto the third-floor porch and forced their way into a vacant third-floor apartment. Officer Winston testified that he remained in the squad car with Fuller, while Officer Harris proceeded to the front of the Calumet building. On cross-examination Officer Winston testified that Officer Harris merely went to the corner of the Calumet building and that he did not enter the building because it was "impossible for him to go into the building. The building is closed up." He also testified that Officer Harris was within the scope of his vision the entire time he was at the front of the Calumet building.

Officer Winston further testified that he then observed defendant (dressed the same as one of the men he observed on the roof of the Arvits building and enter the Calumet building) and his companion exit from the rear of the Calumet building and proceed up the alley toward 47th Street to the front of the "L" station directly across the street from the Arvits building. Officer Winston testified he waited for Officer Harris to return to the squad car and that they, with Fuller, proceeded to the front of the "L" station and placed defendant under arrest. The other man was not apprehended. Defendant denied having been on the roof of the Arvits building.

The testimony of Officer Harris was substantially the same as that of Officer Winston. In addition, he testified that he was able to clearly observe the two men on the

roof of the Arvits building because snow covered the ground and it was a moonlit night; he described the lighting as "practically like day." Officer Harris testified that after he observed the two men enter the Calumet building he left the squad car and proceeded to the front of the building, anticipating the men would attempt to exit the building from the front, and that he did not actually see defendant exit the building. He testified that defendant was placed under arrest at the "L" station and that he was wearing clothing similar to that worn by one of the men he observed on the roof of the Arvits building.

. Officer Harris testified on cross-examination that he was out of sight of Officer Winston "for a split second" when he checked the front of the Calumet building. He also stated that he did not know whether the Calumet building was occupied, but that he thought there were tenants in the building.

Another police car arrived at the scene about an hour later and Officer Harris, in the company of another officer, went to the roof of the higher portion of the Arvits building where he observed a hole in the lower portion of the roof and footprints in the snow around the area. He also observed a ladder lying on the roof of the lower portion. Officer Winston also testified that he ascended the steps to the "L" station to a point where he was able to observe what appeared to be a hole in the lower portion of the Arvits building roof. The entire area was searched, but no burglary tools were recovered. Defendant and Fuller were also searched and no weapons or tools were found on their persons. Both men were transported to the police station where they were again questioned. A police report shows that both men, while at the police station, denied having been on the roof of the Arvits building.

Defendant testified in his own behalf and stated he had never been on the roof of the Arvits building and that he did not attempt to burglarize the Arvits store.

He testified that he had been working at the Central Cold Storage Company, 350 North Dearborn Street in Chicago, until 2:30 on the morning of January 26, 1966. His job consisted of helping truck drivers load and unload their trucks. After he finished work he proceeded to the " 'L' station" (subway station) at Grand Avenue and State Street, boarded a southbound "L" and rode to 47th Street where he got off at approximately 3:30 a. m. Defendant testified it was cold outside and that he waited inside the "L" station for a bus to take him to his father's house only a few blocks distant where he was to pick up some clothes. The police entered the station, accused defendant of having been on the roof of the Arvits building and placed him under arrest. He stated he denied having been on the Arvits building roof. Defendant was wearing a green beany-type cap, a black and white "teardrop" jacket, and a pair of black pants.

Defendant was later recalled to the stand and testified in detail concerning his employment on the date in question, some confusion having arisen during his direct examination with respect to the nature thereof. Defendant testified that he was not employed by the cold storage company itself on the date in question, but was hired by individual truck drivers to help them with their loads and was paid in cash directly by the drivers themselves. He further testified that he had been employed by the company itself some years prior, but had lost his job. He stated he had earned over $20 on the evening of the 25th and morning of the 26th of January helping drivers load ducklings and butter, but that he had gambled away all but thirty cents thereof, which he retained for carfare. He testified he had a transfer for the bus when he was arrested, but the transfer was not produced at trial.

Wilbert Virnala testified in rebuttal for the State and stated that he was a controller at the Central Cold Storage Company. He described in detail the company's operating and record keeping systems and also testified that

the company employs men who handle the loading and unloading of freight. He stated, however, that some truck drivers employ local men not employed by the company to aid in the loading and unloading of the individual trucks after regular company working hours, and that these men are paid in cash by the drivers themselves. The witness further testified that his company had not handled butter for some eight months prior to trial, and that there were no records of unloading having been done after 6:00 p. m., on the evening of January 25, 1966.

Jerome Fuller testified in his own behalf and stated that he was having refreshments in a restaurant across the street from the Arvits building on the morning in question, when two men entered the establishment and began talking that they had just burglarized the Arvits store and that there was clothing on the roof of the building which they were unable to carry away. Fuller stated that he then followed the men out of the restaurant and onto the roof of the Arvits building. Unable to locate any clothing on the roof, Fuller made his way down the rear stairway of an adjacent building (the Calumet building) and was arrested in the adjoining alley. He also testified that defendant was not one of the men in the restaurant who said they had just burglarized the Arvits store.

Defendant contends that he was not proved guilty beyond a reasonable doubt in that the identification testimony given by the State's witnesses was unsatisfactory. We disagree.

Both police officers testified that one of the two men whom they had observed on the roof of the Arvits building was wearing a black jacket and a beany-type cap, and that that man and his companion entered a vacant third-floor apartment in the Calumet building. Although Officer Harris testified that he did not see anyone exit the Calumet building, Officer Winston testified unequivocally that he observed defendant, dressed the same as one of

454

the two men who had entered the building a few minutes before, exit the rear of the Calumet building and proceed up the alley toward 47th Street to the front of the "L" station where he was later arrested. Officer Harris also testified that defendant was wearing clothing identical to that worn by one of the men observed on the roof of the Arvits building.

 Although it is true that both officers testified that they lost sight of the two men after the latter had entered the Calumet building, this break in the continuity of observation did not appreciably affect the credibility of the identification evidence. It can be reasonably said that Officer Winston had defendant in view from the time the men were first observed on the roof until defendant was arrested later in front of the "L" station. Defendant was wearing clothing identical to that worn by one of the men who were observed on the roof of the Arvits building and who had entered the Calumet building. Officer Harris testified that he thought the Calumet building was occupied, but that he was not certain, whereas Officer Winston testified unequivocally that the Calumet building was "closed up" and that it was "impossible" for Officer Harris to have entered the building. Defendant exited the Calumet building, which the trial court could have found to have been vacant, at the hour of 4:00 in the morning, just a few minutes after the men who were observed on the roof had entered the building. We are of the opinion that, on the whole, there was enough evidence to connect defendant with the hole in the roof of the Arvits building and with the men who were seen leaving that roof and entering the Calumet building.

██ ██ Defendant attempted to justify his presence at the "L" station, where he was arrested, by testifying that he had just arrived from work and was waiting in the station for a bus to take him to his father's house just a few blocks away. He testified that when he left work, he walked to the subway station at Grand Avenue

455

and State Street, yet he sought to take a bus from the 47th Street "L" station to his father's house which was about the same distance. He further testified that he had a bus transfer when he was arrested, yet the transfer was not produced at trial. "When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities. (People v. Spagnolia, 21 Ill2d 455.)" People v. Davis, 27 Ill2d 33, 37, 188 NE2d 43. The question of weight and credibility of the evidence is for the trier of fact to determine, People v. Scott, 34 Ill2d 41, 45, 213 NE2d 521, and it is apparent that the trial court chose to believe the testimony of the police officers rather than that of the defendant.

In the case of People v. Oswald, 26 Ill2d 567, 187 NE2d 685, an eyewitness saw a man backing out of a broken store plate glass window, carrying a box with a handle on it, from a distance of 30 feet, and observed the man disappear into an alley. The police were hailed and the witness gave them a description of the clothing the man was wearing. Defendant was found by the police in the area some ten mintues later, wearing clothing matching that worn by the man seen coming out of the broken window. Defendant's conviction for burglary was affirmed, the Court holding that there was enough circumstantial evidence corroborating the witness' identification evidence for the trier of fact to have found defendant guilty.

Similarly, in People v. Chapman, 22 Ill2d 521, 177 NE 2d 143, the prosecuting witness was able to catch only a fleeting glimpse of the man who stole her purse and escaped in a waiting automobile. Defendant was arrested two days later in an automobile similar to the one described and bearing the same license plates. The witness' identification of the defendant was that he was

dressed the same as her assailant and that he was the same size. In affirming defendant's conviction the Court held that certain admissions made by defendant during questioning, at which the prosecuting witness was present, sufficiently corroborated the identification given by the prosecuting witness. See also People v. Sims, 77 Ill App2d 33, 222 NE2d 137; People v. Pavelick, 372 Ill 567, 25 NE2d 20.

The cases cited by defendant in support of his position in this regar dare not in point. They involve matters relating to the overall incredibility of the State's case, rather than the question of the identification of the defendant as the perpetrator, as is involved here. See e. g., People v. Dawson, 22 Ill2d 260, 174 NE2d 817; People v. Coulson, 13 Ill2d 290, 149 NE2d 96.

For these reasons the judgment is affirmed.

Judgment affirmed.

McNAMARA and LYONS, JJ., concur.