People of the State of Illinois, Plaintiff-Appellee, v. Wayne J. Christiansen, Defendant-Appellant.

Gen. No. 69–36.

Second District.

December 12, 1969.

Miller, Schneider and Galasso, of Chicago, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Aldo E. Botti, Assistant State's Attorney, for appellee.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

The defendant was found guilty of burglary by a jury's verdict. A motion for a new trial was denied, judgment on the verdict was entered and he was sentenced to the penitentiary for a term of three to six years.

On appeal the defendant contends that the trial court erred by refusing one of defendant's instructions; that certain fingerprint evidence, admitted over objection, was in error and that the State erred both in the manner of presenting its evidence and by improper closing argument.

At 5:30 a. m. on May 20, 1968, an officer of the Carol Stream police department, while cruising in a squad car, came upon a green, two-door, 1955 Packard automobile. It was parked facing north, on the east side of Gary Avenue, its hood up while a male worked on the engine. The officer parked the squadrol, walked over to the individual and commenced a conversation. At this time he noticed two men emerge through a broken window of a gas station, run toward the Packard, then suddenly veer north and run into a field behind the station. (The field was a spread of tall, wet grass.) The officer described one of the men as wearing a white sweat shirt with dark pants and the other as wearing a dark sweat shirt and dark pants. He chased these men for about 45 feet into the field and, while doing so, noticed the Packard speed away. Being unable to catch the two men pursued, he returned to his squad car and, by radio, requested help. At this time he observed that his clothing, from the waist down, as well as his shoes, were wet from the vegetation, although there had been no rain in the area.

About fifteen minutes later, the officer was called to the scene where another squadrol had, after a high speed chase, stopped the previously described Packard. The officer identified both the automobile and its driver as the same car and individual that had been parked at the gas station. The officer then went to the police headquarters of an adjoining community where two men were being held, one being the defendant herein. Both men's clothing was wet from the waist down; the defendant was wearing a crumpled, dark shirt (under which was a light sweat shirt) and dark pants and there was "quite a bit" of grass in the laces of his shoes. The other man was wearing a dark sweat shirt, dark pants and shoes which also had "quite a bit" of grass upon them. The officer testified that "the subjects compared very much the same" as the men he saw running from the gas station. The officer also testified that he had made two previous checks of the gas station that morning and the window had been intact.

An officer from this adjoining community, who apprehended the defendant and his companion, testified that he was alerted to be on the lookout for two subjects, (one in complete dark clothing and the other with dark trousers and a light sweat shirt) proceeding eastward from Carol Stream; that he observed two subjects hitchhiking eastward, stopped them, requested identification and inquired as to what they were doing, to which they replied that they were hitchhiking from St. Charles and had been dropped off at this location; that he informed them that it was illegal to hitchhike and let them go on their way; that he observed them enter a cafe; that he radioed his headquarters for more information and, at this time, a state trooper driving by was asked to assist; that he and the trooper went into the cafe and requested the two subjects to come to headquarters for interroga-

tion, which they did; that thereafter, the Carol Stream officer and his superior appeared and took the two subjects to the county jail.

Other testimony revealed that, after being arrested, the defendant stated that he had been at a party and was on his way home when apprehended; that he never saw a green Packard or knew its driver. The State introduced evidence that fingerprints of the defendant were found on the inside of the window and on the frame of the Packard. Further evidence established that cash was taken from the register in the gas station.

The defendant's first assignment of error relates to the court's refusal to give the full instruction on the definition of circumstantial evidence, IPI—Criminal 3.02. The court gave the first paragraph of this instruction, as tendered by the State, but refused to give the defendant's instruction which contained the second paragraph. Committee Note on this instruction reads:

> "The second paragraph should be given only when the proof of guilty is *entirely* circumstantial."

Defendant argues that the proof of guilt in the present case was wholly circumstantial as applied to the offense charged. On the other hand, the State takes the position that there was some direct evidence introduced.

Direct evidence has been defined as evidence which, if believed, proves the existence of the fact in issue without inference or presumption, whereas circumstantial evidence is evidence which, without going directly to prove existence of a fact, gives rise to a logical inference that such fact does exist. Direct evidence has been described as testimony of a person who has perceived the existence of a fact, sought to be proved or disproved, by means of his senses. See 29 Am Jur 2d, Evidence, § 264; United Textile Workers v. Newberry Mills, Inc., 238 F Supp 366, 372–373 (1965); State v. Famber, 358 Mo 288, 214 SW2d 40, 43 (1948).

56

 In the case before us the Carol Stream officer saw: the Packard (from which the defendant's fingerprints were later lifted) on the scene; a broken window which a short time earlier was not broken; two men who came from within the gas station by means of a broken window; these same men running toward the Packard, abruptly change direction and run into a field; the clothing worn by the two men; and, later, the condition of the attire worn by the defendant and his companion. He further testified as to the condition of his own attire after running in the field. Additionally, the lessee of the gas station testified that his station was broken into and that cash had been taken. This, in our opinion, was direct evidence establishing that a crime had been committed. Because the officer could not facially identify the defendant as one of the men emerging through the broken window does not, in and of itself, create a complete circumstantial case. Identity is only one element necessary to be proved by the State and this may be accomplished by circumstantial evidence. People v. Sauber, 68 Ill App2d 133, 143, 214 NE2d 918 (1966). Another necessary element of proof is to establish the corpus deliciti. This was done by the direct evidence stated above. We, therefore, conclude that the instant case consisted of direct as well as circumstantial evidence and that the trial court was correct in refusing the defendant's tendered instruction.

At commencement of the trial, the State informed the defendant that it intended to introduce certain scientific evidence by way of fingerprints. On the fourth day of trial it was learned that this evidence consisted of two partial fingerprints lifted from the Packard and a fingerprint card, signed by the defendant, showing one of his fingerprints taken by the sheriff in 1962 when the defendant was 15 years of age. The 1962 fingerprint arose out of a juvenile proceeding against him at the time. The defendant moved to suppress the use of the

1962 print only, since the State had agreed not to use the card or any information contained thereon. The motion was not in writing nor was any factual testimony introduced. Upon hearing of argument, the court denied the motion.

It is first claimed that since the use of the 1962 print was allowed, the defendant was limited in his cross-examination due to the fact that, had he questioned the veracity of the print, the State would have been forced to lay a proper foundation for its entry into evidence. This would have entailed calling in the officer who took the print. This, it is reasoned, would then have divulged to the jury that the defendant had been previously arrested for a crime other than the one for which he was being tried. Conversely, it is claimed that had the motion been allowed, there would have been no risk of creating possible error.

The State examined its expert witness without revealing any previous arrests. The expert, upon comparing the 1962 print with the partial fingerprints obtained from the Packard, opined that all of the prints were those of the defendant. Extensive cross-examination provoked no mention of any previous arrests.

Evidence which tends to prove a fact in issue or to establish motive, intent, identity, accident or absence of mistake is admissible even though it may involve proof of a separate offense. The People v. Dewey, 42 Ill2d 148, 157, 246 NE2d 232 (1969); The People v. Davis, 14 Ill2d 196, 200, 151 NE2d 308 (1958). We are of the opinion that the 1962 print, as argued under this point, comes within the purview of these decisions. Under this rule, the State would have been entitled to introduce, had defendant objected, further testimony supporting the veracity of the 1962 print by calling upon the officer who had taken it. Without objection, such foundation became unnecessary. The defendant's strategy was to waive any objection and thereby hopefully

avoid revealing a separate offense. This cannot be a basis to estop the State in its right to introduce the 1962 print for comparison purposes by claiming that defendant's cross-examination was limited.

It is further contended that the motion should have been allowed because the use of the 1962 print violated provisions of the Juvenile Court Act. Section 702–8 of the Act (Ill Rev Stats 1967, c 37, § 701–1 et seq.) prohibits, without court order, any law enforcement officer or agency from transmitting to the Department of Public Safety or to the Federal Bureau of Identification, any fingerprint or photograph of any boy under 17 years of age or any girl under 18 years of age when arrested or taken into custody. The section further provides that juvenile records shall be kept separately and closed to public scrutiny except by court order.

Section 702–9 of the same Act provides:

> "(1) No adjudication, disposition or evidence given in proceedings under this Act is admissible as evidence against the minor for any purpose whatever in any civil, criminal or other cause or proceeding except in subsequent proceedings under this Act concerning the same minor . . . . Neither the fact that a minor has been the subject of proceedings under this Act nor any confession, admission or statement made by him to the court or to any officer thereof before his 18th birthday is admissible as evidence against him or his interests in any other court or proceeding, except in trials of suits for libel or slander, wherein the fact, confession, admission or statement is material and relevant."

The Legislature has provided that when a motion to suppress evidence is made it shall be "in writing *and state facts* showing wherein the search and seizure were unlawful. The judge shall receive evidence on any issue of fact necessary to determine the motion and the *bur-*

*den of proving that the search and seizure were unlawful shall be on the defendant . . . ."* (Ill Rev Stats 1967, c 38, § 114–12(b).) (Emphasis added.)

 The defendant takes the position that when he orally moved to suppress the 1962 print and called the court's attention to section 702–9 of the Juvenile Act, it thereupon became the duty of the State to prove that such print was not used as evidence in the juvenile proceedings. We disagree and hold that such an interpretation of section 114–12(b) would be the exact opposite of the express provision of the last quoted section.

 It is also claimed that the 1962 print was protected under section 702–9 quoted above. Again, we differ with defendant's interpretation. There is nothing in the record before us that even infers that the 1962 print was used in the evidence, disposition or adjudication of the juvenile proceedings. Since no facts were forthcoming from the defendant to show that the print was used in evidence in the prior proceeding, we can only gather that the print in question was taken in the ordinary procedural, administrative manner and, consequently, not protected under the section.

 The defendant contends that there was no connection between either the Packard, the burglary or himself. The evidence discloses that the Packard was parked in an inferred-inoperable condition near the scene of the burglary. When the two men came out of the gas station, via the broken window, they ran toward the Packard, turned and ran into the field and within moments the Packard left the scene at a very high rate of speed. The automobile and its driver were apprehended within 10 to 15 minutes later. There was testimony that the defendant denied any knowledge of either the Packard or its driver, yet the fingerprints of the defendant were lifted from the car on the same day as the burglary. This was sufficient evidence to establish a connection

between the Packard, the defendant and the burglary. The People v. Malmenato, 14 Ill2d 52, 59, 150 NE2d 806 (1958), cert denied, 358 US 899, 3 L Ed2d 148, 79 S Ct 222.

 The final point is that the defendant was denied a fair trial because of the manner in which the State presented its evidence and closing argument. The tenor of this portion of defendant's argument is general rather than specific. We have reviewed the record and find no merit to this contention.

For the reasons stated herein, the judgment of the trial court is affirmed.

Judgment affirmed.

DAVIS and SEIDENFELD, JJ., concur.