THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD OVERTURF, Defendant-Appellant.

(No. 11861;

Fourth District—June 27, 1973.

Linda West Conley, of Defender Project, and Brian David, Senior Law Student, both of Chicago, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Walter H. Kasten, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant-Appellant Donald Overturf and one Harold Davis, on February 10, 1971, were indicted for the offense of burglary allegedly committed in the early morning hours of January 4, 1971, at the Romany Club in Springfield, Illinois. Trial was originally set for April 19, 1971. When the case was called for trial, Overturf did not appear and it was subsequently ascertained that he had violated the conditions of his bailbond and had fled the jurisdiction, going to the State of Georgia. On April 19, 1971, Davis entered a plea of guilty and was sentenced to one year at the State Penal Farm at Vandalia. Some five months later, Overturf returned and surrendered himself to Illinois authorities, pleaded guilty to the bail jumping charge and was sentenced to Illinois State Penitentiary for an indeterminate term of one to three years. Overturf was then tried before a jury on the burglary charge on November 29, 1971; he was found guilty and sentenced to a term of one to ten years in the penitentiary, which sentence was ordered to run concurrently with the sentence imposed in the bail jumping charge. He appeals from the burglary conviction in this case.

Defendant's first contention is that the evidence did not establish his guilt beyond a reasonable doubt, and the nexus of this argument involves the identification of the defendant at the scene of the burglary.

The witness Hodson lived in an apartment above the Romany Club. At about 2:20 A.M., on the morning in question, he was awakened by the sound of breaking glass. Hodson looked out the alley window of his apartment and saw Harold Davis, whom he knew, standing in the alley. Hodson shouted to Davis saying, "* * * what's going on out there?" Davis ran around the corner and another individual jumped out of a window of the Romany Club and ran around the corner too. Hodson never saw this latter individual's face. He observed that the individual was wearing a tan corduroy coat. The police were immediately called and Officer Dodson of the Springfield police department recorded the call at 2:24 A.M. Dodson called Detective Young who received the call at approximately 2:25 or 2:30 A.M. Detective Young and Detective Meadows went immediately to the Romany Club, found a broken window, observed that there had been an attempt to pry the front door open and inside the tavern found a pry bar, a screwdriver, and a pulled out drawer. Officer Meadows remained in the squad car to receive any additional information which would be relayed to the officers. He started driving, checking the area and saw two men running. He radioed that information to the other squad cars in the area. Officer Gordon Anderson also went to the area and saw two subjects running east towards Sixth Street. He described one of them as being tall, and the shorter of the two as wearing a tan colored coat. He shouted for the subjects to halt and when they failed to do so, he informed other officers in the area that the two subjects were running east on Adams Street and then south on Sixth Street. He gave chase together with Officer Bryant. Officer Bryant testified that the two subjects were running south on Sixth Street when he observed them, and while they were running south the individual who subsequently was identified as the defendant Overturf ran into an alley. Bryant ordered Davis to halt and when he failed to do so, Bryant fired a warning shot at which time Davis halted and put his hands up against the building. Bryant then ran into the alley after Overturf, fired two warning shots and directed Overturf to halt. Overturf kept running and Bryant then shot him in the left leg. The witness Hodson then went to the scene where he saw an ambulance and saw Overturf lying on a stretcher wearing a coat identical to the one he had seen on Davis' companion. The tan corduroy coat was admitted into evidence as Peoples' Exhibit No. 12, and was identified by Hodson as either the jacket, or one identical to the jacket, worn by the individual whom he had seen jump from the window at the Romany Club.

Defendant testified in his own behalf and the record establishes that Overturf and Davis were acquaintances and had been together at 1:30 A.M., on the morning in question. Defendant's version was that he was with one Claire Moffett. At 2:20 A.M., he left his apartment to obtain some sandwiches at the Toddle House on Ninth Street. He noticed a policeman getting out of a squad car some distance away and stepped in a doorway because "I was afraid that something would happen similar to what did * * * It was on my mind I would be framed." According to the defendant's testimony he then left the doorway and proceeded towards Sixth Street when Harold Davis jumped in front of him and defendant began running south on Sixth Street. He testified that he began running because he thought he was in the wrong place at the wrong time or that a gang war was going on. Claire Moffett testified that at 2:20 A.M., on the morning in question, the defendant left her presence to obtain sandwiches. She testified that she and defendant had seen Harold Davis earlier during the morning in question. The jury chose not to believe this version of the incident.

■■ If the evidence of identification is vague, and uncertain it cannot support a conviction. *People v. Gardner*, 35 Ill.2d 564, 221 N.E.2d 232; *People v. Coulson*, 13 Ill.2d 290, 149 N.E.2d 96.

■■ If the only evidence tending to connect defendant with the burglary was Hodson's testimony, that he saw a man jump from the Romany Club while wearing a jacket similar to a jacket owned or possessed by the defendant, the reasonable doubt argument here advanced would have merit. However, there is abundant circumstantial evidence which, together with Hodson's testimony, supports the conviction. The defendant was found in the immediate area of the crime within minutes after the crime had been committed. He was fleeing with Davis whom Hodson had positively identified at the scene of the crime, and he was wearing a jacket identical to that observed by Hodson. He persisted in his flight after warning shots were fired by the officers; he and Davis were admittedly acquaintances and the evidence establishes that the two were together less than an hour prior to the incident.

*People v. Kincy*, 72 Ill.App.2d 419, 219 N.E.2d 662, and *People v. Reed*, 103 Ill.App.2d 342, 243 N.E.2d 628, involve situations in which identifications were made on the basis of articles of clothing allegedly worn by the defendants at the time of the offenses in question. In both cases convictions were reversed because of insufficient identification. In our view, *Kincy* and *Reed* are distinguishable because in neither of those cases was there corroborating evidence such as the attendant circumstances here present and above noted.

■■ Defendant next urges that the trial court erred in allowing proof of a prior burglary conviction. The defendant was convicted of burglary in 1958 in Woodford County, Illinois. He was granted probation which he violated. Probation was revoked and he was sentenced to the penitentiary for two to eight years. He was released from prison on· that sentence in January 1962. In *People v. Montgomery*, 47 Ill.2d 510, 268 N.E.2d 695, the Supreme Court held that proof of prior convictions for purposes of impeachment was to be governed by Rule 609 adopted by the committee on rules of practice and procedure of the judicial conference of the United States. Sub-par. (b) of the Rule provides that: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction *or of the release of the witness from confinement, whichever is the latter date.*" (Emphasis supplied.) Defendant's release in January 1962, was within ten years of the date of his trial and therefore within the time limits imposed in *Montgomery*. The Rule provides that the prior conviction may be shown if it involved dishonesty, and leaves the decision to the discretion of the trial judge as to whether or not the conviction is to be admitted. *Montgomery* also quotes Chief Justice Burger who stated in *Gordon v. United States*, 383 F.2d 936, that the various factors to be considered in the exercise of the discretion was the nature of the crime, the subsequent career of the person and whether the crime was similar to the one charged. The admission by the trial judge of defendant's prior conviction meets the standards set forth in *Montgomery* and it was not error.

■■ Lastly, defendant contends that the ten year maximum of his sentence is excessive. In view of defendant's prior felony conviction, and his violation of probation we see no merit to this contention. See *People v. Newberry*, 1 Ill.App.3d 251, 273 N.E.2d 205.

Judgment affirmed.

CRAVEN, P. J., and SMITH, J., concur.