THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALBERT COX, Defendant-Appellant.

First District (1st Division)   No. 77-1704

Opinion filed April 16, 1979.

Robert L. Byman and Leland J. Badger, of Chicago (Jenner & Block, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Michael R. Sherwin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Albert Cox, was indicted for the offenses of burglary and possession of burglary tools. (Ill. Rev. Stat. 1977, ch. 38, pars. 19-1, 19-2.) Following a jury trial, defendant was found guilty of each charge. The trial court subsequently imposed concurrent sentences of 4 to 12 years for burglary and 1 to 3 years for possession of burglary tools. Defendant appeals from the judgments of conviction.

On appeal, defendant contends that (1) he was not proved guilty beyond a reasonable doubt; (2) the State's closing argument was prejudicial where defendant was characterized as a professional criminal without supporting evidence; (3) the State improperly referred to defendant's failure to testify; (4) the trial court erred in instructing the jury on the use of circumstantial evidence; and (5) the trial court erred in imposing convictions and sentences for both burglary and possession of burglary tools.

Officer James Cochran testified that on September 16, 1975, at about 12:30 a.m., he was on squad car patrol in the vicinity of Fifth Avenue and Madison Street in Maywood, Illinois. He was driving south on Fifth Avenue and testified that he noticed no people on the street. While stopped at the traffic light at the corner of Fifth Avenue and Madison Street, Cochran heard the outside burglar alarm go off at Tykes Drugstore, located at the northwest corner of the intersection. Cochran made a right turn onto Madison, parked in front of the drugstore, got out of the squad car and checked the front and side windows and the front door of the drugstore. Cochran found that the glass was intact and the door was secure. He then walked north on Fifth Avenue and entered an alley behind the drugstore. The alley he entered continues for about one half block and connects with a north-south alley between Fifth and Sixth Avenues. There were no street lights on Fifth Avenue at the point Cochran entered the alley, but there was one mercury vapor light in the north-south alley.

When Cochran arrived at the rear of Tykes Drugstore, he observed two men jump off the roof. Cochran testified that one man was dressed in dark clothing and the other man wore dark pants and a tan leather jacket which was slightly longer than waist length. Each man carried a paper bag.

The suspects ran to an abandoned car in the alley and ducked behind it. When Cochran announced that he was a police officer, both men jumped up and ran north down the north-south alley. Cochran ran after them, ordered the men to stop and then fired two shots that hit neither suspect. The suspects ran westbound behind a garage in the middle of the block toward Sixth Avenue, at which time Cochran lost sight of them for about five seconds. Cochran continued to chase both men through a

vacant lot between houses, across Sixth Avenue and into the back yard of a residence at the corner of Sixth Avenue and School Street.

At this point the suspects split up. The man wearing dark clothes continued to run south through the yard, climbed over a fence and eluded Cochran. The suspect with the tan leather jacket ran into the yard toward the garage and climbed up on the flat roof of an addition to the garage. Thinking the suspect might be using the garage to clear the fence, Cochran ran to the back alley and approached the garage. He then shined his flashlight up on the garage addition and discovered the suspect in the tan jacket was still on the roof, lying in a prone position. Cochran ordered him down from the roof, placed him under arrest and returned to the squad car. Officer Cochran testified that the man he found lying on the roof and whom he arrested was the defendant.

After placing defendant in custody, Cochran returned to the rear of the drugstore and found a torn paper bag containing several watches and an assortment of change. At the site of the abandoned car, Cochran discovered a brown paper bag containing a pry bar, hammer, drills and some more watches. Cochran subsequently inspected the roof of the drugstore and discovered a two-foot hole had been knocked in the roof. In addition, a chisel, a screwdriver and drill bit had been left on the roof.

Cochran further testified that another individual, Loren Blackwell, was later taken into custody concerning the burglary investigation. Blackwell had been released pending results from the crime laboratory. Laboratory tests later indicated that Blackwell had been involved in the burglary. However, at the time of trial Blackwell had left the jurisdiction.

Later that same morning Cochran returned to Tykes Pharmacy and met one of the co-owners, Mr. Dozinski. Inside the drugstore, Cochran noticed two cash registers had been emptied of their change and that a section of the metal roof had been pried down. Cochran also found that the watch display case had been pried open, some watches had been taken and others were lying on the floor. Cochran also noted that the drugstore had an alarm system that ran along the floor behind the counter. When a light beam emitted from the system is broken, the alarm is triggered. Finally, Cochran testified that Dozinski identified the recovered watches as property missing from his store.

On cross-examination, Cochran testified that there was a vapor light on Fifth Avenue, as well as a lamp in the north-south alley. Nonetheless, he did not see defendant's face until he was arrested. Cochran further testified concerning his pursuit of the suspects. Initially, he was 30 to 40 feet away from the men. At the time the suspects reached the abandoned car, they were 50 to 60 feet distant. At this point, Cochran announced his office, the suspects fled and Cochran began chasing them into the north-south alley. While the officer and both suspects were in this alley, Cochran

fired two shots which missed. Both suspects disappeared behind a garage for no more than four to five seconds and emerged with Cochran still in pursuit.

Further evidence was adduced via stipulation. Three sets of police reports, together with the stipulated testimony of the individuals who prepared them were admitted into evidence.

One exhibit was a report compiled by two evidence technicians assigned to the Cook County Sheriff's Department. The parties stipulated that the two technicians would have testified that on September 16, 1975, they investigated an alleged burglary at Tykes Drugstore and discovered that suspects had drilled a hole through the roof of the drugstore and entered the establishment. Wood and tar samples were collected from the entry point. Directly below the entry point a knit cap and insulation material from the roof were found. The evidence technicians next proceeded to the Maywood Police Department and collected a nail puller, an adjustable wood drill bit and both suspects' clothing. Included in the items of clothing received was a pair of black cloth gloves taken from defendant. These items were inventoried and submitted to the laboratory for comparative study.

The second exhibit was a report dated December 29, 1975, submitted by Robert Gonsowski, a criminalist with the Bureau of Identification, Illinois Department of Law Enforcement. It was stipulated by the parties that Gonsowski would have testified that he received all of the aforementioned samples and items of clothing from the Cook County Sheriff's Police evidence technicians and that the hair samples removed from the knit cap were similar in color and characteristics to a hair standard taken from Loren Blackwell.

The third exhibit was a report dated January 19, 1976, compiled by Kenneth Vail, a criminalist with the Bureau of Identification. Vail's report indicated that the drill bit revealed tar-like material and imbedded wood and that the pry bar contained tar-like material. However, Vail concluded that this tar-like material was dissimilar from the tar contained on the drugstore roof. Defendant's coat and Blackwell's shoes also evidenced minute traces of tar-like material of insufficient quantity and quality for comparative examination. Examination of defendant's other clothing failed to reveal anything of evidentiary value. Examination of Blackwell's pants revealed masses of insulation which were compared with insulation samples from the roof of Tykes Drugstore. According to Vail's report, both samples were similar and could have originated from the same source.

It was further stipulated that if Eugene Dozinski were called to testify, he would state that he was co-owner of Tykes Pharmacy. At the time of the burglary, the drugstore was closed and secured and he had not

given permission to anyone to be inside. He would further testify that the watches recovered were watches taken from the drugstore.

After the State rested, the defendant made a motion for a directed verdict, which the trial court denied. Defendant then rested without presenting any evidence. The jury subsequently returned a verdict of guilty of the offenses of burglary and possession of burglary tools.

■■ Defendant asserts he was not proved guilty beyond a reasonable doubt because Officer Cochran's identification testimony was impermissibly doubtful and uncertain. Specifically, defendant contends that a reasonable doubt of guilt was established since Cochran did not see the suspects' faces either when they jumped from the drugstore roof or during pursuit and because he lost sight of them for about five seconds.

■■ The State has the burden of proving beyond a reasonable doubt that an accused is the person who committed the crime charged. This burden may be met by the positive identification of one witness who had an adequate opportunity to observe the offender. (*People v. Clark* (1972), 52 Ill. 2d 374, 386-87, 288 N.E.2d 363.) However, an identification need not be positive to support a conviction (*People v. Oswald* (1963), 26 Ill. 2d 567, 187 N.E.2d 685), but there need be some other fact or circumstance to assist the trier of fact in determining the weight to be attributed to the identification testimony. *People v. Washington* (1970), 121 Ill. App. 2d 174, 257 N.E.2d 190.

When Cochran saw the two suspects jump from the drugstore roof, he identified one as wearing a longer than waist length tan leather jacket. Cochran admittedly could not distinguish that person's facial characteristics because of the darkness of the hour (12:30 a.m.), the absence of sufficient artificial lighting (one vapor lamp in the alley) and the fact that the suspects were either hidden behind an automobile or in flight. Accordingly, from the time the suspects were discovered until defendant was arrested we cannot say Cochran made a positive identification of defendant.

Nonetheless, we are convinced that the jury was apprised of sufficient facts and circumstances supportive of Cochran's identification testimony and defendant's conviction. Cochran initially identified defendant according to his clothing, maintained close pursuit and saw defendant climb on top of a garage addition. Defendant was apprehended hiding in a prone position on top of the garage addition, one block from the scene of the crime, early in the morning in a deserted neighborhood. The few seconds that the suspects were out of Cochran's sight did not appreciably affect the credibility of his identification testimony. Cochran stated that he continued to chase the same two suspects wearing the same clothing after they rounded the garage.

Defendant's theory of innocence was that a person nearby in the

neighborhood might begin to run upon hearing two shots and that Cochran might have pursued that individual. However, in light of Cochran's continual and close pursuit, the fact that the chase occurred early in the morning through a deserted neighborhood, the proximity to the crime scene of the garage where defendant was found hiding, and the fact that defendant was wearing a jacket identical to the jacket worn by one of the suspects, the jury was justified in rejecting defendant's theory. Accord, *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156 (identity of offender may be proved even though officer did not see his face).

Defendant also maintains that the "five second gap" creates a reasonable doubt of his guilt and is consistent with his theory of innocence. Several cases, however, recognize that short lapses of eye contact during a chase neither appreciably refute the credibility of identification testimony nor establish a reasonable doubt of guilt. *People v. Davis* (1968), 95 Ill. App. 2d 448, 237 N.E.2d 854, is factually similar to the instant case. In *Davis*, two police officers, acting on a tip that a roof-top burglary would occur, conducted a stake-out of a building. They observed several men on the roof of the building and noted the clothing they wore. Both officers lost sight of these suspects for several minutes when they left the roof and entered an adjacent building. However, defendant was arrested when he exited the building and was found to be wearing clothing identical to that worn by one of the suspects. The *Davis* court affirmed defendant's conviction and found the "break in the continuity of observation did not appreciably affect the credibility of the identification evidence." 95 Ill. App. 2d 448, 455, 237 N.E.2d 854, 857.

The court also noted the fact that there was some evidence that the building out of which defendant came may have been vacant. In any event, defendant's appearance at 4 a.m., moments after the suspects were viewed leaving the roof and entering the building from which he was observed leaving, supported the jury verdict. See also *People v. Niebes* (1979), 69 Ill. App. 3d 381, 387 N.E.2d 800 (fact that officer lost sight of suspects for a second or two on at least four occasions during a chase did not appreciably damage the credibility of his identification testimony); accord, *People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514.

Cochran's testimony concerning identification of defendant by his clothing supports the jury's verdict. In *People v. Overturf* (1973), 12 Ill. App. 3d 441, 299 N.E.2d 34, the court found no reasonable doubt of guilt where circumstantial evidence supported a clothing match:

> "* * * The defendant was found in the immediate area of the crime within minutes after the crime had been committed. He was fleeing with Davis whom Hodson had positively identified at the

scene of the crime, and he was wearing a jacket identical to that observed by Hodson. He persisted in his flight after warning shots were fired by the officers; * * *." (12 Ill. App. 3d 441, 444, 299 N.E.2d 34, 36.)

Accord, *People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514 (concerning identification of culprits via clothing).

■ Defendant also contends that the identification was not corroborated by any physical evidence. The State concedes that the crime laboratory results did not conclusively link defendant with the scene of the crime. However, physical evidence sufficiently establishes that Loren Blackwell was the principal in the burglary. Hair samples from the knit cap recovered at the scene of the crime matched Blackwell's hair sample. Furthermore, Blackwell's pants contained insulation material comparable to insulation material found at Tykes Drugstore. Since Cochran testified that both suspects carried paper bags subsequently found to contain burglary tools and proceeds, the jury may properly have concluded under the evidence defendant was legally accountable. Assistance rendered to a principal prior to or during the commission of a crime will render an individual accountable for the principal's conduct and such assistance can be inferred from activities which occur after the offense. *People v. Clifford* (1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.

The jury which saw and heard the evidence was in a superior position to assess credibility and its determination will not be set aside unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt. (*People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576.) The jury found Cochran's account to be credible, rejected defendant's theory of innocence and found the physical evidence probative of defendant's guilt. We cannot say that the evidence presented was so unsatisfactory as to raise a reasonable doubt of defendant's guilt.

■ Defendant's second contention is that he was prejudiced because in closing argument the State repeatedly suggested he was an habitual professional criminal without any supporting evidence. Specifically, defendant complains of eight allegedly prejudicial remarks:

(1) "Ladies and gentlemen, you have heard in this courtroom evidence and facts of a professional burglary."

(2) "I suggest that it is a professional burglary."

(3) "Ladies and gentlemen, that professional burglary would have been successful except two things took place."

(4) "The second thing that's rather unique about this case is the professional nature in which the crime was committed."

(5) "Here we have what is termed in the trade, a job by roof men. This is a roof job. It's not the everyday, ordinary type of apartment

burglary. It was done on the premises where there are a lot of good burglary proceeds to be had. It is done by the offendors [*sic*] getting on the roof, and burglary tools were found in this case. And doing a very professional job of cutting through that roof, a two foot square whole [*sic*]."

(6) "It shows the professional nature of the crime being committed."

(7) "So far they had done a professional job."

(8) "But even professionals can blow it."

The State answers that defendant made no objection to any of these closing arguments and is precluded from now alleging error. Although failure to object to statements made in closing argument ordinarily waives any error contained in the statements (*People v. Dailey* (1972), 51 Ill. 2d 239, 282 N.E.2d 129; *People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385), an appellate court may consider the alleged errors in the State's closing argument despite the lack of objections at trial where there has been an interference with the defendant's right to a fair trial. Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)); *People v. Romero* (1967), 36 Ill. 2d 315, 223 N.E.2d 121.

■■ While it is improper for the State to suggest that a defendant has been engaged in other criminal activity for which he is not on trial (*People v. Thomas* (1974), 22 Ill. App. 3d 854, 318 N.E.2d 342; *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577), we find that is not the case here. The State's comments justifiably emphasized the professional nature of this burglary alone and do not concern other crimes or support an inference of other crimes. They were based on the evidence adduced at trial and constitute fair inferences from such evidence. The *modus operandi* and the burglary tools recovered clearly demonstrated that this was a sophisticated rather than a simple burglary. Accordingly, defendant was not prejudiced, the plain error doctrine of Supreme Court Rule 615(a) is not applicable and any allegations of error upon appeal are waived.

■■ Defendant next argues that a remark by the State during closing argument improperly referred to defendant's failure to testify in violation of *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, and section 6 of division XIII of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 155—1). Specifically, defendant alleges that the following remarks were prejudicial:

"When he was arrested by Officer Cochran, what is he doing on a garage roof, at approximately 12:30 in the morning? Is he up there staring at stars? I heard no testimony that he is into astrology or anything of that nature."

The trial court sustained defendant's objection to this statement and

instructed the jury to disregard the State's remarks. Moreover, the court subsequently tendered to the jury an instruction that:

"The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict."

Defendant's prompt objection and the trial court's actions in sustaining the objection, instructing the jury to disregard the remarks and tendering a curative instruction served to cure any error. *People v. Martinez* (1978), 62 Ill. App. 3d 7, 377 N.E.2d 1222.

■ In any case, we find the State's remarks were not impermissible. The test in deciding whether a statement made in closing argument violated defendant's right to remain silent is whether the reference was intended or calculated to call the jury's attention to the fact that defendant failed to testify. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283.) We read the State's commentary as merely a dramatization of the highly incriminating evidence that defendant was discovered hiding on a garage roof at 12:30 a.m. in the same vicinity where Cochran had seconds before chased two men from the scene of a burglary. In our view, these remarks were not intended or calculated to direct the attention of the jury to defendant's failure to testify. The State's single statement constitutes proper comment on the evidence adduced at trial. Accordingly, neither defendant's statutory nor constitutional rights were violated.

The State's statement may also be construed merely as comment on Cochran's testimony that he found defendant hiding in a prone position on top of the garage addition. It is well settled that a prosecutor may refer to the testimony of a State's witness as being uncontroverted even where the defendant is the only person who could have contradicted it. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283.) We consider the State's "stargazing" remark as a reference to Cochran's uncontroverted account and the resultant inference that guilt was the only reasonable interpretation of defendant's behavior.

Defendant's next contention is that the trial court erred in instructing the jury on the use of circumstantial evidence. Defendant urges that the trial court erred in refusing to give the jury the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968) (hereafter cited as IPI Criminal). In its entirety, IPI Criminal No. 3.02 provides:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

Defendant additionally submits that two other errors resulted from the deletion of the second paragraph of IPI Criminal No. 3.02. First, tendering an instruction to the jury concerning accountability was error, because the jury was improperly led to believe that direct evidence had been presented to support the accountability charge. Second, reversible error is alleged because defendant was not able to inform the jury as to his theory of the defense: that because the State's evidence was entirely circumstantial as to defendant's guilt, defendant may have been an innocent bystander who ran and hid upon hearing gunshots.

The committee notes to IPI Criminal No. 3.02 state: "The second paragraph of the instruction should be given only when the proof is *entirely* circumstantial." (Emphasis in original.) We find that the State has presented some direct evidence; accordingly, we need not address defendant's latter two contentions.

Direct evidence is the proof of a fact without the necessity of inference or presumption or evidence of a fact perceived by means of a witness' senses. (*People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156.) Circumstantial evidence, however, consists of proof of facts and circumstances from which the trier of fact may infer other connected facts which usually and reasonably follow according to common experience. *Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill. App. 2d 229, 202 N.E.2d 688.

Direct proof of guilt was established through Officer Cochran's eyewitness testimony. Cochran recounted that he heard a burglar alarm at Tykes Drugstore while his patrol car was stopped at a light. Pursuant to his investigation of the suspected burglary, he discovered two suspects perched on the roof, who jumped into an alley and fled. Both suspects carried paper bags that they quickly abandoned in flight. Cochran admitted that he did not see the suspects' faces, but testified that one man was dressed in dark clothes and the other was wearing a longer than waist length tan leather jacket. Cochran pursued the suspects and lost sight of them for, at most, five seconds while they rounded a garage. However, Cochran stated that the same two suspects reappeared beyond the garage and entered the backyard of a corner home. From this point, the suspects split up. The suspect in the dark clothes eluded Cochran by jumping a fence. However, Cochran saw the suspect with the tan coat climb onto a flat addition to a garage. Upon circling the garage to approach from behind, Cochran found that the suspect with the tan coat was lying flat in hiding upon the garage roof and that he was the defendant. Subsequent examination of the paper bags resulted in the discovery of some of the tools upon which the charge of possession of burglary tools was based. Defendant argues that the facts that Cochran could not distinguish

defendant's face until he was arrested and that there was a five second gap in visual contact militate against consideration of Cochran's testimony as direct evidence. In our opinion, these circumstances do not serve to cast doubt upon Cochran's visual perception that he continued to pursue the same suspect in the tan leather jacket from the drugstore roof to the garage roof. (See *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156.) If the jury believed Cochran's perceptions that the suspects abandoned a paper bag subsequently found to contain burglary tools and proceeds and that the suspect Cochran first saw and continually pursued was the same individual he arrested, then Cochran's testimony supports a direct inference of defendant's guilt. Accordingly, we find no error in the trial court's refusal to give paragraph two of IPI Criminal No. 3.02.

In any event, the committee note to this instruction states that when proof of guilt is entirely circumstantial it is *permissible* to include the second paragraph. The note is not couched in terms of stating when the paragraph must be given. (*People v. French* (1978), 59 Ill. App. 3d 353, 375 N.E.2d 502.) Even if the trial court erred in refusing to give the second paragraph, reversal is not required unless it appears that justice has been denied or that the verdict resulted from such error. *People v. Hammers* (1976), 35 Ill. App. 3d 498, 507, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534; *People v. Merkel* (1974), 23 Ill. App. 3d 298, 302, 319 N.E.2d 77.

In our view, defendant's theory of the case was unreasonable and void of evidentiary support. If there was any error, it could not have contributed to the jury's verdict and defendant was not prejudiced.

Defendant finally contends that the trial court erred in convicting and sentencing him for both burglary and the possession of burglary tools. Defendant relies upon the rule enunciated in *People v. Blahuta* (1970), 131 Ill. App. 2d 200, 205-06, 264 N.E.2d 819, that the crimes must be "independently motivated" or derive from separate conduct to support dual convictions. Our supreme court recently rejected the independent motivation test in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

"We * * * reject the 'independent motivation' test as a standard for determining whether multiple convictions and concurrent sentences are permissible. Our rejection of this test is limited solely to concurrent sentences.

Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and

concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts." 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.

Since possession of burglary tools is not a lesser included offense of burglary (see *People v. Blakeney* (1978), 59 Ill. App. 3d 119, 375 N.E.2d 1309, *cert. denied* (1979), ___ U.S. ___, 59 L. Ed. 2d 464, 99 S. Ct. 1231, multiple convictions with concurrent sentences may be entered if these convictions derive from separate acts or conduct.

The facts here demonstrate that separate acts established the offenses of burglary and possession of burglary tools. Alerted by a burglar alarm, Officer Cochran saw defendant and another man jump off the roof of the Tykes Drugstore and run to a nearby abandoned car. Each man was carrying a paper bag and both ditched the bags by the abandoned car and fled. Subsequent to defendant's capture, Cochran returned to the abandoned car and discovered that one bag contained a pry bar, hammer, drills and watches. Cochran then climbed onto the roof of the drugstore and found a two-foot hole had been made through the roof. Additionally, he discovered a chisel, a screwdriver, a drill bit and a pair of rubber gloves.

■■ Under these facts, it is apparent that the separate act of possession of burglary tools continued after the completion of the act of burglary, because the perpetrators fled from the scene carrying the burglary tools. These circumstances constitute "a series of incidental or closely related acts" which, under *King,* support convictions and concurrent sentences for multiple offenses.

The cases relied on by defendant (*People v. Garnes* (1973), 12 Ill. App. 3d 210, 298 N.E.2d 399, and *People v. Blahuta* (1970), 131 Ill. App. 2d 200, 264 N.E.2d 819) are distinguishable because both defendants were caught in the act of using burglary tools, yet were charged for both possession and burglary. Under those facts, multiple charges clearly arose from the same act or conduct.

The trial court here committed no error by imposing judgments of conviction and sentences for both burglary and possession of burglary tools. Defendant's convictions and sentences are affirmed.

Affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.