# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY RARDIN *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1912.*

1. CRIMINAL LAW—*what does not render interpreter incompetent.* The fact that the interpreter secured to interpret the testimony of the prosecutrix in a rape case was distantly related to her is not ground for holding him incompetent as an interpreter, there being no claim that he was not qualified to correctly translate the questions and answers or that he did not fairly and honestly translate them.

2. SAME—*prosecutrix may detail entire transaction, including fact of theft of her property.* In a prosecution for rape the prosecutrix may detail the entire transaction with the defendants, and the fact that it appears from her testimony that while committing the assault upon her the defendants forcibly took away her money and property does not render the evidence improper, as disclosing an offense for which the defendants are not indicted.

3. SAME—*the court may, in a proper case, call witnesses the prosecution does not wish to vouch for.* In a criminal case the court may, on a proper showing, call and interrogate witnesses who the State's attorney thinks should testify but is not willing to vouch for, in order that the State's attorney may have the privilege of cross-examining the witnesses if he desires.

4. SAME—*what punishment for rape is not excessive.* Imprisonment for life is not an excessive punishment for three men who

conspired together to induce a foreign girl, who could not speak English, to leave the waiting room of a depot under the belief that they were befriending her and follow them to a secluded place, where they brutally assaulted and raped her and stole her money.

5. SAME—*jury should not fix the time and place of punishment of a minor defendant.* Where two of the three defendants in a rape case are over twenty-one years of age but the third is under twenty-one, it is proper for the jury to fix the punishment of the adults at imprisonment in the penitentiary, but as to the minor the jury should not fix the term or place of punishment, but the court should sentence him to the State reformatory for an indefinite period.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding.

L. A. CRANSTON, for plaintiffs in error.

W. H. STEAD, Attorney General, and O. H. WYLIE, State's Attorney, (EDWARD C. HALL, and B. H. TAYLOR, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

The plaintiffs in error, Henry Rardin, Samuel Newlin and Ira Walker, were jointly indicted at the August term, 1910, of the Ford county circuit court for the crime of rape, by force, upon Julia Shadid, a female of about the age of eighteen years. After a motion to quash the indictment had been overruled a plea of not guilty was entered by each of the defendants, and upon a trial before a jury a verdict of guilty was returned against each defendant and the punishment of each defendant was fixed by the jury at imprisonment in the penitentiary for his natural life, and the court, after overruling motions for a new trial and in arrest of judgment, sentenced each of said defendants, upon the verdict of the jury, to imprisonment in the penitentiary for the period of his natural life. This writ of error has been sued out from this court by the defendants jointly, to bring into review said record of conviction and sentence.

It appears from the record that on the evening of August 9, 1910, at about the hour of seven o'clock, the prosecutrix, Julia Shadid, a native of Assyria, who had been in this country about six months and who could not speak the English language, and who was engaged in traveling by railroad from town to town as a peddler of lace and other fabrics, purchased a ticket from Danforth, Illinois, to Springfield, Illinois, over the Illinois Central railroad. The prosecutrix should have left the train at Gilman and taken a train at that place for Springfield. She was, however, carried past the station at Gilman and did not leave the train until she reached the city of Paxton, where she arrived about nine o'clock of the same evening. On her arrival at Paxton she went into the railroad station, and to a hotel porter who represented the Middlecoff Hotel she showed her ticket and a note given her by the conductor of the train upon which she had arrived to the conductor of a return train, asking that she be taken back to Gilman, as she had been carried past that station by mistake. The porter inquired if she desired to go to a hotel, but she gave him to understand that she would wait at the station for the return train. The porter, after taking her to the ticket agent and showing him her ticket and the note from the conductor, returned to her the ticket and note and left her in the waiting room at the station. A young lady by the name of Anna Nowlin, who resided at Loda, was also in the station waiting for a friend to call for her with a carriage to take her to her home, and the two young women remained in the waiting room at the station until about 10:30 o'clock, when Miss Nowlin's friend called for her, and she left the Assyrian girl in the waiting room alone, apparently asleep. On the afternoon of the 9th of August the plaintiff in error Rardin went to Gilman and returned to Paxton on the same train upon which the prosecutrix arrived, and brought with him a quart of whisky and a

quart of wine. Upon the arrival of Rardin he was met at
the station by his co-defendants, Newlin and Walker, and
other friends, notably the witnesses Swanson and Lewis,
who were called by the court upon the motion of the State's
attorney. Plaintiffs in error and their friends remained in
and about the station until after Miss Nowlin left, when
plaintiff in error Newlin went into the waiting room and
wakened the prosecutrix, picked up her suit-case and asked
her if she did not want to go to a hotel, and informed
her he would take her to one. He was apparently sober
and was well dressed. The prosecutrix evidently believed
him to be a hotel porter and followed him out of the wait-
ing room and in the direction of the hotel, as she supposed.
He went north, carrying her suit-case, she following him,
along the Illinois Central railroad tracks to a street which
led east, and he then turned east across the street and con-
tinued on until he came to an alley in the rear of the house
of a Mr. Lewis. He then turned into the alley, past a pile
of lumber, to near an old barn which stood upon the rear
of the Lewis lot and which abutted upon said alley. When
he started, Rardin, Walker, Lewis and Swanson followed
him and the prosecutrix as far as the Smith lumber yard,
which was located just north and a little west of said alley,
where they waited until Newlin and the prosecutrix had
passed into the alley, when they congregated on the street
near the alley and some of them soon went into the alley.
When Newlin and the prosecutrix reached the barn New-
lin seized her. By this time she had become thoroughly
alarmed and in broken English pleaded with Newlin to let
her go. She soon commenced to scream and broke away
from Newlin and started to run out of the alley. As she
passed Rardin he either pushed or knocked her down,
and she was then seized by Rardin and Walker. A pocket
handkerchief was crowded into her mouth and she was
held down upon the ground. At first she appears to have
been paralyzed with fear and rendered unconscious by the

fall or blow she received. While upon the ground she was ravished by Walker and probably by Rardin and Newlin. She soon regained consciousness and got the handkerchief out of her mouth and by her screams and outcries aroused the people in the neighborhood, most of whom were in bed. When she regained her feet she ran to the Lewis home, crying and calling in her native tongue for help. Mrs. Lewis had retired but was aroused by the cries and went to her door and soon admitted the girl to her home. The parties who were in the alley followed the girl to the Lewis porch, where she had taken refuge. After she was admitted to the Lewis home she fell upon the floor with fright and fatigue, where she remained in a semi-unconscious condition until the police officers came. From the Lewis home she was taken to the Middlecoff Hotel by the police officers. On the way to the hotel she cried and moaned continually. The landlady and a lady guest took her to a room and quieted her as best they could. A physician was called later, and an examination of her person disclosed her right arm was badly wrenched, her breasts bruised, her abdomen scratched, her thighs bruised, and her private parts were torn and lacerated and her underclothing was stained and soiled. The plaintiffs in error Rardin and Walker fled from the town of Paxton on a train that passed through that place soon after twelve o'clock and were arrested at Rantoul the next morning, and the next forenoon Newlin left the State.

It is first urged that the evidence is not sufficient to sustain the verdict. The record is voluminous and is full of profanity and obscenity, mainly brought out on the examination, as witnesses, of the plaintiffs in error Rardin and Walker and the young men who were with them on the evening of August 9, or upon the examination of witnesses to whom the plaintiffs in error described, while in jail, what took place on the evening of August 9 from the time they left the station until the prosecutrix escaped from

them, and it would serve no useful purpose to defile the Reports of this court by repeating that language in this opinion. Suffice it to say that the testimony of the prosecutrix given upon the trial shows that the offense charged against plaintiffs in error was committed upon her while she was in the alley in the rear of the Lewis home. Her testimony on that subject is corroborated by her mental and exhausted physical condition at the time she was admitted to the Lewis home and by her physical injuries and the condition of her clothing after she arrived at the hotel, as testified to by Dr. Kelsheimer, who was called early on the morning of the 10th of August, and by three or more other physicians who made a physical examination of the prosecutrix soon thereafter; also by the fact that the plaintiffs in error were present at the time the prosecutrix was overcome and outraged, and by the admissions made by the plaintiffs in error to their rowdy companions and to their cellmates while in the county jail. From all these proven facts, without here setting them out in detail, we are of the opinion that the evidence introduced on the trial establishes the guilt of the plaintiffs in error of the crime charged against them, beyond all reasonable doubt.

The prosecutrix was a native of Assyria and had only been in this country six months prior to the trial and could not speak or understand the English language, and it was necessary that she be examined and testify upon the trial as a witness through an interpreter. The court called Elias Tayar, a merchant of the city of Bloomington, who was a native of Assyria, who had resided in this country eight years and who understood the English language and could translate the Assyrian language into the English and the English into the Assyrian language, who was duly sworn as an interpreter and the prosecutrix was sworn and examined as a witness through the said interpreter. It appeared that said Tayar was a distant relative of the prosecutrix,—that is, their great-great-grandfather was the same

person.  Upon thàt fact being made to appear, the position was taken by counsel for plaintiffs in error that by reason of such relationship Tayar was incompetent to act as an interpreter, and an objection to his competency having been made and overruled, it is now urged that the court committed reversible error in permitting Tayar to act as an interpreter of the testimony of the prosecutrix.  It is not claimed that Tayar was not competent to translate the Assyrian language into the English or the English into the Assyrian language, or that he was not fair and did not honestly and impartially interpret the questions propounded to the prosecutrix or her answers thereto, but the position of the plaintiffs in error is, that the relationship of the interpreter to the prosecutrix rendered him incompetent. The author of the article on Interpreters, in the English and American Encyclopedia of Law, (vol. 17, p. 30,) says: "It would evidently be improper for a court to appoint as interpreter one who would reasonably be expected to be unfair and biased in his translation of the testimony.  A degree of discretion must, however, necessarily be vested in the trial court as to the person who shall be employed as an interpreter, and the exercise of such discretion will be reviewed only when it is shown that it has been the subject of abuse on the part of the trial court to the injury of one of the parties."  And this court, in *Chicago and Alton Railroad Co.* v. *Shenk,* 131 Ill. 283, said, on page 285: "Some degree of discretion must be vested in the trial court as to the person who shall be employed as an interpreter, but that discretion ought not to be so exercised as to deprive a party altogether of the testimony of his witness, so long as an interpreter is offered against whom there is no legal objection."  Tayar was not incompetent as a witness by reason of interest or otherwise, and could have been called and have testified to the body of the offense had he possessed knowledge upon that question.  We are of the opinion he was competent to act as an

interpreter and was not disqualified by reason of his relationship to the prosecutrix.

It is urged that the court erred in permitting the State to make proof of the commission of other crimes by the plaintiffs in error. The prosecutrix testified that she had a small sack, supported by a cord, which she wore about her neck, which contained a $10 and a $20 goldpiece; that the sack was worn beneath her clothing, and that when Walker had her down upon the ground he tore open her waist and took from her said goldpieces, and that she had a hand-bag which she carried in her hand, and that during the assault one of the plaintiffs in error seized the bag and took therefrom $2.30. The robbery of the prosecutrix by the plaintiffs in error was committed at the time she was ravished, and the two offenses were so intimately connected, in point of time, with each other that they could not be separated. The proof of the robbery was not improper. In *Parkinson* v. *People,* 135 Ill. 401, on page 405, it was said: "Where a party is indicted for one offense and a complete, detailed narrative of that offense by the witnesses involves a recital of another offense, it is not error to permit them to complete the detailed narrative of the offense for which the party is indicted, notwithstanding the recital of an offense for which he was not indicted." The court did not err in permitting the prosecutrix to testify to all that took place from the time she left the station in company with Newlin until she entered the Lewis home, as characterizing the acts and conduct of the plaintiffs in error.

It is also complained that the court erred in admitting the statement of Anna Nowlin as to the conduct of the plaintiff in error Rardin while she was in the waiting room with the prosecutrix. She testified that Rardin came into the waiting room in an intoxicated condition and persisted in talking to her, and showed her a roll of bills and offered to hire a rig to take her to Loda. This testimony was ad-

mitted by the court but was afterwards stricken out. We do not think the admission of the statement of Anna Nowlin should reverse the judgment.

The names of Orville Swanson, Joshua Trickel and Henry Lewis were endorsed upon the indictment. These witnesses claimed they were present at the time of the commission of the offense. The State's attorney represented to the court that while he thought the jury should hear the evidence of these witnesses he did not desire to call them and thereby vouch for their truthfulness, and asked the court to call them upon its own motion. Thereupon the court called the witnesses and they were sworn and were questioned by the court and were then examined and cross-examined by the State and the defendants. The witnesses were friends and associates of the plaintiffs in error and evidently testified with a view to shield their friends and to shield themselves. The court was very careful, during their direct and cross-examinations, to safeguard the rights of the plaintiffs in error. We think the practice adopted in taking the evidence of these witnesses was fully justified by the holdings of this court in *Bressler* v. *People,* 117 Ill. 422, *Carle* v. *People,* 200 id. 494, and *People* v. *Cleminson,* 250 id. 135.

It is finally contended that the punishment meted out to the plaintiffs in error by the verdict of the jury and the judgment of the court is excessive. The statute provides the crime of rape may be punished by imprisonment in the penitentiary for not less than one year and that such imprisonment may extend to the period of the natural life of the accused. The offense committed in this case against society and upon the person of Julia Shadid was most shocking. She was alone at the railroad station, in a place where she had a right to be. She could not speak the English language, which fact the plaintiffs in error knew, and under the pretense of taking her to a hotel they conspired together to have one of their number entice her into fol-

255 — ?

lowing him to a dark and secluded place, where in a most cruel and brutal manner they assaulted her. The jury heard the evidence. They saw Julia Shadid and the plaintiffs in error, and we cannot say they were not justified, under their oaths and the law, in meting out to the plaintiffs in error Rardin and Newlin the extreme penalty of the law.

The jury found the age of Newlin to be twenty-five years, that of Rardin twenty-two years and that of Walker eighteen years. Under the statute the jury properly fixed the punishment of Newlin and Rardin at imprisonment in the penitentiary, but the jury should not have fixed the time or place of imprisonment of Walker, he being under twenty-one years of age, but he should have been, upon being found guilty by the jury, sentenced by the court to the State reformatory for an indefinite period. *People* v. *Smith,* 253 Ill. 283.

The judgment of the circuit court will be affirmed as to Henry Rardin and Samuel Newlin and will be reversed as to Ira Walker, and the case as to him will be remanded to the circuit court of Ford county; and as the record shows that Ira Walker is now under twenty-one years of age, leave is hereby granted to the State's attorney of that county to move for, and the circuit court is hereby directed to enter, a proper judgment against him upon the verdict, sentencing him to the State reformatory for an indefinite period, under the authority of *Henderson* v. *People,* 165 Ill. 607, *Neathery* v. *People,* 227 id. 110, *People* v. *Coleman,* 251 id. 497, and *People* v. *Smith, supra.*

The judgment is affirmed as to Henry Rardin and Samuel Newlin and reversed as to Ira Walker, and the case is remanded as to Ira Walker for re-sentence.

*Affirmed in part and remanded, with directions.*