THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANILE SALCEDO TORRES, Defendant-Appellant.

(No. 57886;

First District (5th Division)—March 29, 1974.

Cornelius E. Toole, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was found guilty of murder and sentenced to a term of 14-20 years. On appeal, he contends error was committed in that (1) a Spanish-speaking attorney was not appointed to defend him; (2) his trial should have been in Spanish, as well as in English; (3) a police officer was allowed to act as an interpreter for the prosecution; (4) his wife was permitted to testify to a confidential conversation; and (5) a police officer was allowed to testify to a translation to him by a third person of a spontaneous declaration in Spanish by defendant's wife.

It appears that Thomas Penabad was offered by defense counsel to act as interpreter. After being interrogated by the court and the State concerning his qualifications, he was accepted. Jose Mercado was then offered by the State to act temporarily as its interpreter, because a Mr. Rios was unavailable. He was also interrogated by the court concerning his qualifications and was allowed to act as interpreter without objection by defense counsel. Subsequently, during the trial, Manuel Rios, a police officer, arrived and was substituted as the State's interpreter without any questions as to his qualifications and without objection by defense counsel.

The following testimony was received: Carmen Velez, defendant's wife,

testified for the State that on October 16, 1969, she and defendant had been living apart about 1 year, although they continued to work at the same factory. On October 15, 1969, defendant approached her at work and asked her to come back to him. She replied, "No, I do not want to go back with you, because you are a very bad man." Defendant then said, "If I don't kill you, I will kill your brother." A co-worker at the factory was present during this conversation.

She further testified that at about 7 A.M. on October 16, 1969, she and her daughter left their apartment and were waiting on the front steps of the building for her brother, when she heard "something that exploded". She looked through the glass outer door and saw her brother lying up against the door with a revolver on the floor at his side and her husband kneeling over him. She saw defendant take hold of her brother's neck. Defendant looked at her and, after breaking through the glass door, fled. She was unable to see whether there was anyone else in the hallway near her brother and defendant. She did not know Domingo Pratt, nor did she see him or anybody else there at the time of the shooting.

Thomas Blomstrand, a police officer, testified for the State that on October 16, 1969, he responded to a radio call, and upon arriving at the scene of the occurrence he saw a man "laying on his side with his head and shoulder and right arm to a broken window of a front door", and "lying next to him on the floor in the hallway was a revolver". He also testified that the victim's sister was excited and speaking in Spanish. An interpreter at the scene informed him that she said her husband had shot her brother.

Defendant testified that early on October 16, 1969, he and Domingo Pratt stopped at the residence of his wife to drive her to work. He and Pratt entered the building and met his wife, his daughter and his brother-in-law in the hallway. An argument ensued between Pratt and his brother-in-law, who was shot by Pratt. His wife had gone outside when the argument began, and after the shooting he opened the door and left, and Pratt broke the glass door as he left. He denied that he had told his wife at work the day before that he was going to kill her brother, and he denied that he shot or that he touched his brother-in-law that morning.

OPINION

### I.

Defendant first contends he was denied the effective assistance of counsel, because he was not provided with a Spanish-speaking attorney at arraignment.

■■ It is well established that arraignment is a "critical stage" in a felony case and that the right of counsel attaches automatically before any plea is made or accepted. (*People v. Hessenauer*, 45 Ill.2d 63, 256 N.E.2d 791.) At the arraignment, through a court approved interpreter, defendant in answer to questions by the court, stated that he had no lawyer, that he had no money to hire one, and that he would like the public defender to be appointed for him. The court then appointed the public defender and directed him to use the interpreter and discuss the charge with defendant. After a short period of time, the appointed counsel informed the court that the discussion had taken place and that defendant was entering a plea of not guilty.

■■ We have found no evidence in the record nor is it argued by defendant that he was not fully informed at arraignment concerning the charge against him. Nor does our review of the record reveal any evidence that defendant was unable to comprehend what was taking place during the arraignment proceedings. To the contrary, it appears that defendant was fully informed of his rights by the public defender and, in the absence of any indication of incompetence in the manner his appointed counsel carried out his duties, we are of the opinion that no prejudice resulted to defendant because he did not have a Spanish-speaking attorney. We conclude that the court did not err in appointing a non-Spanish-speaking attorney to represent defendant at arraignment. See *People v. Harper*, 43 Ill.2d 368, 253 N.E.2d 451.

## II.

Defendant next contends he was denied a fair trial because (1) he was not furnished with an indictment in the Spanish language; (2) the trial and other proceedings were not conducted in Spanish as well as in English; and (3) he could not speak or understand English with any proficiency and, as a result, could not comprehend the totality of the proceedings.

■■ Defendant provides no authority in support of his argument that he should have been furnished with an indictment in Spanish, and we believe that the rule to be applied in the case of a foreign-speaking defendant is the same for all defendants; namely, that their constitutional rights should be protected, including the right to be fully informed concerning the charges in an indictment. We have already found that no error resulted because a Spanish-speaking attorney was not appointed on arraignment, and that defendant was fully informed by his attorney, with the assistance of the appointed interpreter, concerning the charges against him. We further note that there is no contention that the defendant was not provided with a copy of the indictment in English, as re-

quired by section 113—4(a) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 113—4(a)), and we conclude that he was not deprived of a fair trial because the indictment was not in the Spanish language.

Neither do we accept defendant's contention that he was deprived of a fair trial because the proceedings were not conducted in Spanish. As we view it, a defendant has a right to be fully informed of proceedings, and in order that he comprehend their nature, information should be given him by his attorney, using an interpreter where needed.

We note the following colloquy occurred during the cross-examination of defendant:

> "(Answers through Interpreter Manuel Rios, unless otherwise indicated.)
>
> Q: Mr. Torres, on the 16th day of October, 1969, how long had you resided in Chicago? He can answer himself. Do you need an interpreter?
>
> A: Four or five years.
>
> Q: You had lived in America for about 15 years, is that correct, at that time?
>
> THE WITNESS: A: Yes.
>
> Q: You understand my questions without the interpreter?
>
> A: I need the interpreter.
>
> THE WITNESS: A: Sometimes.
>
> A: Sometimes.
>
> Q: Sometimes you need the interpreter and sometimes you don't, is that correct, Mr. Torres?
>
> THE WITNESS: A: Yes.
>
> Q: Mr. Torres, can you tell us in English where you lived on October 16, 1969?
>
> A: I don't know the exact date but I remember 4510 North Magnolia.
>
> Q: Without the interpreter, Mr. Rios, if you will.
>
> THE COURT: No, proceed. If he can answer it in English, he will but no dallying around. Some things he understands and some things he does not.
>
> Mr. KAVANAUGH (Asst. State's Attorney): Fine.
>
> THE COURT: The jury must understand all of it.
>
> MR. KAVANAUGH: I want to see if he can understand.
>
> THE COURT: There is no question but that he can understand some English."

Thus, it appears that defendant, living in this country for 15 years, had some familiarity with the English language. He understood the testimony given in Spanish and he has not argued that the court re-

fused to allow the necessary time for his counsel to fully inform him through the interpreter of the proceedings. The record indicates that his trial counsel conducted a vigorous and able defense, which we believe could only have resulted from a full communication with his client.

See *Tapia-Corona v. United States* (9th Cir. 1966), 369 F.2d 366, where the court held that defendant, who spoke only Spanish and who had available for immediate consultation an official Spanish interpreter, sitting at the defense counsel table, was not entitled to have all English testimony instantly interpreted to him.

■■ We are of the opinion that defendant has not shown he was prejudiced by the fact that the proceedings were not also conducted in the Spanish language, and we believe that not only was sufficient opportunity afforded defendant to comprehend the totality of the proceedings but that he did, in fact, understand them, either through whatever familiarity he had with the English language or by communication with his attorney through the interpreter.

### III.

Defendant's next point is that the court erred in permitting Rios, a State's Attorney's police officer, to act as the interpreter for the prosecution. He argues that the court did not properly determine Rios' qualifications and that, in any event, Rios should not have been permitted to interpret because of his office. In *People v. Murphy*, 276 Ill. 304, 114 N.E. 609, it was held that a police officer is not disqualified to act as an interpreter in a criminal case. In *People v. Rardin*, 255 Ill. 9, 99 N.E. 59, it was held that a degree of discretion must be vested in the trial court as to who should be used as an interpreter, and the exercise of such discretion will be reviewed only on a showing that it has been abused.

■■ Defendant made no objection to Rios being substituted as interpreter and he has not informed us of, nor have we been able to glean from the record, any prejudice to defendant because of the use of a police officer interpreter. Neither has defendant pointed out the basis of his contention that Rios was not qualified, nor does defendant, who had his own interpreter present, claim that Rios did not honestly and impartially perform his work. In view thereof, we are of the opinion that it was not error to permit the police officer to act as an interpreter here.

Defendant also, under this legal point in his brief, argues that the entire proceedings should have been in the Spanish language as well as English. He likens his position to that of a deaf-mute, in the sense that neither understands the utterances of the court, the attorneys or the witnesses. He then argues that "Illinois chapter 51—par. 58.01" requires

the entire proceedings to be interpreted as if a "deaf-mute was a party". And because "chapter 165—11, Illinois Revised Statutes" did not require the translation of the entire proceedings as was required for deaf-mutes, that he was denied equal protection of the law.

We first note that in 1969, section 48.01 of chapter 51 (Ill. Rev. Stat. 1969, ch. 51, par. 48.01) was amended to apply only to deaf persons and that it merely requires a deaf-sign interpreter "to interpret the proceedings to and the testimony of such deaf person". Section 165—11 of chapter 38 (Ill. Rev. Stat. 1971, ch. 38, par. 165—11) requires, in the case of a non-English-speaking defendant, the appointment of an interpreter that defendant can understand and who can understand him, and paragraph 65—12 of chapter 38 (Ill. Rev. Stat. 1971, ch. 38, par. 165—12) requires the interpreter to "interpret or translate all questions propounded or answers given as directed by the court".

■■ Section 48.01 of chapter 51 requires only that a deaf person's testimony be interpreted and that he be informed of the proceedings by the interpreter, and, from our review of the record, we find that defendant was not deprived of equal protection of the law because his trial was not conducted in the Spanish language.

## IV.

Defendant also argues error was committed when his wife was permitted to testify as to a privileged conversation. She testified that on the day before the shooting, defendant approached her at work in the presence of a co-worker and asked her to come back to him. When she refused, he said, "If I don't kill you, I will kill your brother." Defendant maintains that this testimony by his wife violated paragraph 155—1 of the chapter 38 (Ill. Rev. Stat. 1969, ch. 38, par. 155—1), which prohibits, with certain exceptions, testimony in a criminal proceeding by a spouse concerning any communication made by the other. In *People v. Palumbo*, 5 Ill.2d 409, 414, 415, 125 N.E.2d 518, the court stated:

> " 'Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential it is not a privileged communication. [Citations.] And, when made in the presence of a third party, such communications are usually regarded as not privileged because not made in confidence.' "

■■ The record here discloses that the conversation took place in a factory, where others were working, and in the presence of a co-worker. Under these circumstances and considering the fact that in the conver-

sation defendant threatened to kill his wife or her brother, we believe that the statement to which his wife testified was not intended to be confidential and was properly admitted.

## V.

Defendant's final contention is that the court erred in permitting a police officer to testify to a statement made at the scene by the victim's sister, who was also defendant's wife. The statement was made in Spanish and was translated to the officer by a bystander, which defendant argues was hearsay so far as the officer was concerned.

The State contends that the statement qualified as an exception to the hearsay rule in that it was made while she was in a state of excitement and before she had sufficient time for reflection and fabrication. Officer Blomstrand testified that he was in a police car when he received a call at 7 A.M. concerning the shooting, and he went directly to the scene. When he arrived, defendant's wife was speaking excitedly in Spanish, and an interpreter at the scene told him that she was saying that her husband had shot her brother. In *People v. Freeman*, 113 Ill.App.2d 7, 251 N.E.2d 310, the court stated that three factors were necessary to bring a statement within the spontaneous declaration exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) the absence of time to fabricate; and (3) the statement must relate to the circumstances of the existing occurrence. In *Peterson v. Cochran & McCluer Co.*, 308 Ill.App. 348, 356, 357, 31 N.E.2d 825, the court said:

"Whether the circumstances under which a declaration was made are such as to make it reasonably probable that it was spontaneous, presents a preliminary question for the determination of the trial court. The question of admissibility is one of administration, each case being properly decided upon its own facts, and in this regard the trial court should be clothed with a reasonable degree of latitude, since the application of the principle depends on the circumstances of the particular case."

■■ Here, absent the fact that the statement was translated to a police officer by a bystander, the statement would have been admissible under the spontaneous declaration exception to the hearsay rule. We believe, however, that the rule to be used here is set forth in 3 Wigmore, *Evidence*, § 812(3) (Chadbourn Revision 1970):

"(3) A person conversing with a third person through an interpreter is *not qualified* to testify to the other person's statements, because he knows them only through the hearsay of the interpreter. Ordinarily, therefore, the third person's words cannot be

proved by any one except the interpreter himself * * *."
Under this rule it would appear that the interpreter should have been called to testify concerning the statement and that it was improper for the court to have allowed the police officer to do so. This conclusion requires an examination of the record to determine whether the error was so prejudicial as to require a new trial. In this regard, we note that defendant's wife testified that (1) she heard the gunshot; (2) she saw her brother lying on the floor as she looked through the glass door; (3) she saw defendant kneeling on the floor with his hands around her brother's neck; (4) she saw the revolver on the floor next to her brother; (5) she did not see any other person there; and (6) defendant had threatened to kill her or her brother the day before. We note also that, after the shooting, defendant fled to New Jersey, where he used another name.

In view thereof, we believe that the translated statement of defendant's wife was the substance of her unimpeached trial testimony and was merely cumulative thereto. Even if hearsay testimony is improperly admitted, reversal is not warranted where the same matter has been proved by properly admitted evidence. *People v. Williams,* 117 Ill.App.2d 34, 254 N.E.2d 81.

Here, defendant does not contend that the evidence was insufficient to prove him guilty beyond a reasonable doubt, and we do not believe that a different result in the event of a retrial would reasonably be anticipated, even if such retrial were totally free from improper evidence. *See People v. Wilson,* 51 Ill.2d 302, 281 N.E.2d 626.

■■ For the reasons stated, we believe that the admission of the police officer's testimony concerning the translated statement of defendant's wife was, at most, harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824.

Accordingly, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.