The People of the State of Illinois, Plaintiff-Appellee, v. Dale Allen (Impleaded), Defendant-Appellant.

(No. 58011; ▮▮▮▮▮▮▮▮▮▮▮▮

First District (3rd Division)—August 15, 1974.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Dale Allen and his co-defendant, James Nanz, were indicted for aggravated battery and attempt to commit murder. They were tried by a

judge, without a jury, in the circuit court of Cook County. At the close of the evidence the prosecution dropped the attempt murder charges and the trial court found both men guilty of aggravated battery. Allen was sentenced to a term of 1 to 3 years in the penitentiary. Nanz was sentenced to 4-years' probation, the first 6 months to be served in the House of Correction. Dale Allen has appealed from his conviction.

He presents two issues for review. He contends that it was prejudicial error for the trial court to allow the use of a certain interpreter during the trial testimony. He complains that the interpreter was a friend of the complaining witness, a witness at trial, an interested party, and a person who had personal knowledge of the facts of the case. He argues that the interpreter should have been disqualified for these reasons. He also contends that the evidence was not sufficient to prove his guilt.

We reverse and remand.

On the evening of August 15, 1972, Hussein Gooba, the complaining witness, received stab wounds. The prosecution's version of the incident and the defendant's version were contradictory. The prosecution's case-in-chief consisted of the testimony of Hussein Gooba and a police officer who investigated the incident. Gooba spoke no English and Mohammed Nassar served as the interpreter. Throughout the trial defense counsel objected strenuously to the use of Nassar as an interpreter. The trial court overruled these objections.

Defense counsel's objection was that Nassar was a close personal friend of Gooba and that Nassar was interested in the outcome of the case. The stabbing incident began with Gooba's visiting Nassar's apartment at 4638 N. Albany St., in Chicago, Illinois. As Gooba was leaving the apartment building, at about 10 P.M., three young men attacked him. Two had knives; one had a razor strop. At trial Gooba identified Allen and Nanz as two of the three. He testified that Allen had stabbed him with a knife, and that Nanz had hit him with a razor strop. Gooba escaped from the three men and ran into the apartment building where Nassar lived. He banged on the door of Nassar's apartment. Eventually Nassar opened the door and let Gooba into his apartment. Nassar called the police.

The police arrested Allen at the scene. Gooba saw Allen in a police car and made gestures to the effect that Allen was responsible for his wounds. The police questioned Gooba at the scene and in the hospital 2 days after the incident. Nassar was his interpreter both times. Nassar later testified that he gave his own account of the incident to the police on the night of the stabbing. During the direct examination of Gooba, defense counsel again objected to Nassar as interpreter. He based his objection on the allegation that Nassar had observed the attack and

could not be disinterested. He also implied that because all of Gooba's verbal communication with the police before trial had been through Nassar, Nassar could have "tailored" Gooba's account of the incident to fit his own reconstruction.

The trial court called Nassar as a court's witness and allowed defense counsel to cross-examine him. Nassar testified that he heard screams and banging on the door and went downstairs to let Gooba in. In response to defense counsel's inquiry he further testified that he did not hear any shots fired and did not own a gun. The relevance of these responses became more apparent later on during the trial. A police officer testified that at the police station after the incident, Nanz, the co-defendant, told him that during the struggle an unidentified person fired shots from the second floor window of 4638 N. Albany into the courtyard. Allen maintained that one of these shots grazed him in the side. Nanz corroborated this testimony and Allen was later treated for gunshot wounds at the hospital. It was defendants' theory that Nassar may have fired the shots and was, therefore, directly involved in the incident. The police officers who searched Nassar's apartment did not find a gun.

At trial defendants presented evidence to show that the attack on Gooba was prompted by the screams of Celina Gallant, an acquaintance of the defendants, whom Gooba allegedly attacked with a knife.

Allen and Nanz had attended a birthday party for Nanz in an apartment at 4640 N. Albany Street. This address was located in the same courtyard building, just opposite Nassar's address. Celina Gallant was standing alone in the courtyard waiting for Richard Thomas, who had returned to the apartment to get his cigarettes. According to Celina, a man with a knife, whom she identified at trial as Gooba, grabbed her and ripped her blouse. Allen, Nanz, and Thomas heard her screams and came to her rescue. Celina broke away from her assailant and ran from the courtyard. Diane Matera, a friend, was entering the courtyard and saw Celina running. She accompanied Celina to her home which was about 10 blocks away.

The three men struggled with Gooba in an attempt to get the knife away from him. During the struggle Nanz hit Gooba with a razor strop. Allen was hit by gunfire from the second floor window and Nanz helped him into his apartment. Thomas continued to struggle with Gooba, then returned to Nanz' apartment.

Shortly thereafter the police arrived. The police observed Thomas in a blood-stained shirt and arrested him. Allen complained that he had been shot and he and Gooba were taken to the hospital. Later that evening during a search for weapons, the police arrested Nanz on an outstanding warrant for another offense. During the questioning of Nanz,

he revealed to the police that he, Allen and Thomas had decided to beat up Gooba because he had made an insulting remark to a female friend of theirs. The police did not recover any weapons at the scene.

■■ Our decision to reverse and remand for a new trial makes it unnecessary to delve any further into the testimony. We base this decision on our finding that, under the circumstances, it was reversible error for Nassar to serve as an interpreter. The trial court has the discretion to determine the fitness of a person called to be an interpreter. (*People v. Rardin* (1912), 255 Ill. 9, 99 N.E. 59; Ill. Rev. Stat. 1971, ch. 38, par. 165—11.) In the instant case the defendant alleges there has been an abuse of the trial court's discretion. We agree.

Before the trial began, the prosecution tendered Nassar as an interpreter from English to Arabic and Arabic to English. Defense counsel objected, claiming that Nassar knew the facts and circumstances of the case and could not be disinterested. The prosecution maintained that he had not observed the struggle. As an additional reason to use Nassar, the prosecution informed the court that it had encountered difficulty in obtaining an interpreter, but did not show what had been done in this regard. The trial court overruled defense counsel's objection and permitted him to be sworn in as the interpreter. Defense counsel continued to object to Nassar after he had been sworn. His objections were based on Nassar's interest in the case and on his incompetency as an Arabic interpreter. In defendants' motion for a new trial the objection was renewed.

As the testimony developed at trial, there was some indication that Nassar might have been involved in the incident. The implication was that Nassar might have been guilty of some wrong doing. Certainly Gooba's testimony was material to the prosecution's case and a biased interpreter would have been prejudicial to the defendants. In addition, Nassar had interpreted for Gooba during his statements to the police before trial. It would have been better to find someone who was less involved in the incident than Nassar.

The prosecution represented to the trial court that it had difficulty in obtaining a more impartial interpreter. However, in the city of Chicago and environs there are many institutes where an Arabic interpreter could have been found. There was no showing in the record that any of the possible choices had been tried. A short recess could have served as an opportunity for both parties to attempt to secure another interpreter.

The cases cited by the prosecution where no abuse of discretion was found are distinguishable. In *Lujan v. U.S.*, 209 F.2d 190 (10th Cir. 1953) the court stated that a disinterested interpreter was essential and recessed the court to find one. When none could be found the court

allowed a blood relative to interpret. In *People v. Rardin, supra,* the only connection between the complainant and the interpreter was that they were distant relatives. In *People v. Murphy* (1916), 276 Ill. 304, 114 N.E. 609, the trial court allowed a police officer to interpret when, after a short recess, another interpreter could not be found. See *People v. Torres,* 18 Ill.App.3d 921, 310 N.E.2d 780, where the court again allowed a police officer to interpret.

In conclusion we find that reversible error has been committed. In light of this finding we will not consider defendant's second contention on appeal. Accordingly the judgment of the circuit court of Cook County is reversed and the cause remanded.

Judgment reversed and remanded.

McNAMARA, P. J., and MEJDA, J., concur.