THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HECTOR NIEBES (Impleaded), Defendant-Appellant.

First District (5th Division)    No. 77-863

Opinion filed February 16, 1979.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of armed robbery and given a sentence of four years to four years and one day imprisonment. On appeal, it is contended (1) that defendant was denied a fair trial by the admission of a transcript of the victim's previous testimony in that (a) such testimony was rendered incomprehensible through the use of an unqualified interpreter and (b) the State failed to exercise due diligence in procuring the victim's attendance at trial; and (2) that defendant was not proved guilty beyond a reasonable doubt.

On an afternoon in July, an off-duty Chicago police officer was driving in his personal car when, at a distance of 100 feet, he observed a man later identified as Juan Ortega Ruiz walking eastbound on the south side of the street. Ruiz was followed by three men—one of whom was later identified as defendant. The officer then saw the three men, who were holding shiny metallic objects, knock Ruiz to the sidewalk and hold him down while his watch was pulled from his wrist by one of the three (later identified as Filipe Torres) and his pockets searched by defendant and the third man.

The officer pulled up alongside and identified himself to Ruiz who then entered the car. By this time, the three men had run across the street and entered a nearby alley, where they ran northward, and the officer and Ruiz followed a parallel course along the street located just east of the

alley. For the most part, the buildings formerly standing on the west side of such street had been razed, so that the officer's view of the men was obstructed only for a second or two as they passed behind each of the four buildings still standing. The flight down the alley covered almost an entire block, and when the men changed course and ran easterly the officer stopped his vehicle in their path, exited the car with his weapon drawn, announced his office, and ordered them to stay where they were. Torres continued to run, but defendant and the other person remained. When ordered to empty their pockets, defendant produced a long knife, $30 in cash, and some personal papers.

At a preliminary hearing held the next day, Ruiz testified through an unidentified interpreter, who was by occupation a probation officer and whose use as a translater was suggested by the prosecutor. On direct examination, Ruiz testified that a man whom he identified as defendant and two companions had attacked him; that defendant held a razor to his right side as the companions took his wristwatch, $15, and his identification, and that they fled after obtaining his property.

During the course of cross-examination, Ruiz testified that defendant was wearing the same clothes in court as he had during the incident in question, i.e., blue slacks and a white short-sleeved shirt. When asked whether defendant wore a mustache during the incident, Ruiz replied, "The way he is now." Defense counsel repeated the question, and Ruiz replied that he had not noticed the mustache the day before but that defendant looked the same both days. Ruiz further testified that defendant was shorter than he and had approached from the left while holding a razor in his right hand. When asked, "And which side did the offender put the razor to you by," Ruiz replied, "The left side," while indicating his right side. The following exchange then occurred through the interpreter:

"MR. WEXLER: There were three offenders and they all started running?

THE INTERPRETER: Yes. They started running.

Q: In which direction?

A: That is when the police officer came to the scene.

Q: In which direction were they running?

A: Through the hallway, through the hallway.

Q: Is that to the north or south or east or west? Did you say a hallway or an alley?

A: He says he was on Division. Ther [sic] were running toward Milwaukee.

Q: And one last question. Where did this incident take place? On the corner of Wood and Division. Is that correct?

A: Yes.

Q: On which corner?

A: Division, corner of Division.

MR. ROBBINS: If he knows.

THE INTERPRETER: He says he doesn't know which way it runs, Wood Street.

MR. WEXLER: What's located on the corner?

THE INTERPRETER: A light.

Q: Is that on the corner?

MR. ROBBINS: Objection. Irrelevant.

THE INTERPRETER: A tavern."

The following exchange then occurred during the course of redirect examination:

"Q: Ask him if he understands the difference between hallway and an alley.

A: He says he understands what a hallway is.

Q: Ask him if the defendant was returning between the building or inside the building.

A: On the side of the building.

You have to undersatnd [*sic*] one thing. He is Mexican and I am Puerto Rican so I'm trying to do my best."

When the interpreter explained that there are no alleys in Mexico, both the prosecutor and defender stated that they had no further questions.

Six months prior to trial and 14 months after the incident in question, an investigator for the State's Attorney's office who had been asked to subpoena Ruiz visited the address that had been given by Ruiz and found the entire second floor of that building to be vacant, including the apartment Ruiz had lived in. The investigator also found that the tenants had been transients; that the landlord kept no records concerning them; that Ruiz had left no forwarding address; that the police had no identification number or arrest record on file for him; that he was not listed as a registered alien, a licensed driver, or a registered automobile owner; that two of Ruiz's former neighbors indicated that he had frequently expressed a desire to return to Mexico, but they did not know whether he had or where he would have gone in Mexico; and that in subsequent canvasses of the area of his last address he could neither find Ruiz nor obtain information concerning his whereabouts.

Finding that defendant had an adequate opportunity to cross-examine Ruiz during the course of the preliminary hearing and that the State had exercised due diligence in attempting to locate him, the trial court admitted the transcript of his previous testimony.

OPINION

Defendant first contends that the court improperly admitted the

preliminary hearing transcript of Ruiz's testimony because the qualifications of the interpreter had not been properly ascertained and the State had failed to exercise due diligence in securing the witness's presence at trial. As a result, he argues that he was denied the right to confront Ruiz.

■■■ The State argues that defendant waived consideration of this issue by failing to include it in a written post-trial motion. Ordinarily issues, including those of constitutional dimension, are waived if not raised by a written post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, a reviewing court may, as a matter of grace, consider alleged errors which have not been preserved for review by failure to object in the trial court where the magnitude of the error may result in substantial prejudice to an accused's rights. (*People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16, *cert. denied* (1974), 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644; *People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.) As the improper admission of a transcript of the preliminary hearing testimony in place of the witness' appearance at trial would deprive an accused of the right to confrontation and perhaps a fair trial, we will review this contention of defendant.

■■ Initially, we note that calling an interpreter is a matter within the sound discretion of the trial court and, absent abuse which operates to deprive the accused of some basic right, its decision will not be disturbed by a court of review. (*People v. Soldat* (1965), 32 Ill. 2d 478, 207 N.E.2d 449; *People v. Murphy* (1961), 21 Ill. 2d 149, 171 N.E.2d 618, *cert. denied* (1961), 368 U.S. 847, 7 L. Ed. 2d 44, 82 S. Ct. 76.) When the linguistic handicap of a witness is at issue, the reviewing court—which has before it only the written record, should accord more than ordinary deference to the conclusions of the trial judge, who observed the witness' demeanor and gestures and heard possibly important variables of inflection and emphasis. (*People v. Tripp* (1974), 19 Ill. App. 3d 200, 311 N.E.2d 168.) The issues presented by the contention that a trial court abused its discretion in this regard are whether the witness' testimony presented through the interpreter is understandable, comprehensible, and intelligent; and, if it was not, whether such lack of intelligibility was brought about by an ineffective and incompetent interpreter. *People v. Starling* (1974), 21 Ill. App. 3d 217, 315 N.E.2d 163.

■ Abuse of discretion has been found in instances such as where counsel made numerous objections to the competency of the interpreter and the interpreter had to be admonished against conversing with the witness (*Starling*); where defense counsel's cross-examination of a prosecution witness was restricted because of that witness' linguistic difficulties (*People v. Shok* (1957), 12 Ill. 2d 93, 145 N.E.2d 86); and where the

interpreter had been the same person who had translated the witness' initial statement to the police and the evidence indicated possible involvement in the incident in question (*People v. Allen* (1974), 22 Ill. App. 3d 800, 317 N.E.2d 633); however, it has not been viewed as an abuse of discretion to appoint an unnamed interpreter (see *Tripp*) or one whose profession is law enforcement (*People v. Torres* (1974), 18 Ill. App. 3d 921, 310 N.E.2d 780). Moreover, minor inconsistencies which arise from linguistic problems but which do not relate to the identification of the accused will not vitiate the value of such testimony (*Tripp*; *People v. Brinkley* (1965), 33 Ill. 2d 403, 211 N.E.2d 730), particularly where such testimony is corroborated (*Murphy*; see also *Starling*; *Tripp*).

Here, defendant neither objected to the interpreter when he was called upon to translate the victim's testimony nor did he point out or protest the alleged ineffectiveness of the interpreter during the course of the witness' examination. Nevertheless, he maintains that the testimony given through the interpreter was so lacking in comprehension and responsiveness that the trial court should have sua sponte conducted a voir dire examination of the interpreter's qualifications either at the time the prosecutor proffered him or, in any event, at the time that he admitted that he was Puerto Rican and the witness was Mexican. We cannot agree.

■■■ The fact that the interpreter was an unnamed probation officer did not in any fashion diminish his capability (*Tripp*; *Torres*); nor do we find it significant that the record fails to show a voir dire examination of the interpreter where it appears that the defense did not ask some showing of his qualifications. During the course of redirect examination, the interpreter explained the problem as to the witness' use of the term "hallway" for "alley" by stating that he was Puerto Rican while the witness was Mexican, and that in Mexico there are no alleys. Contrary to defendant's argument, we believe that this incident demonstrated the interpreter's adherence to his duties as, under pressure to clarify the use of the term "hallway," he did not editorialize but repeated the term used by the witness. Moreover, our review of the record satisfies us that while the testimony was initially somewhat nonresponsive, it was clarified by further examination and, when viewed as a whole, it appears to have been understandable, comprehensive, and intelligent. Furthermore, Ruiz's identification of defendant was corroborated by the testimony of the arresting officer, who had observed the occurrence. Under the circumstances, we see no merit in defendant's challenge to the admissibility of the transcript of the victim's previous testimony on grounds that the interpreter was ineffective.

■■■ We turn then to the question raised by defendant as to whether the transcript was otherwise inadmissible. Where there was an adequate opportunity for cross-examination of the preliminary hearing testimony

of a deceased or otherwise unavailable witness and where, if unavailable, the State has shown due diligence in procuring the attendance of said witness, the earlier testimony of that witness is properly admitted at trial. (*People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116, *cert. denied* (1977), 431 U.S. 918, 53 L. Ed. 2d 229, 97 S. Ct. 2184; *People v. Burton* (1972), 6 Ill. App. 3d 879, 286 N.E.2d 792, *cert. denied* (1973), 411 U.S. 937, 36 L. Ed. 2d 399, 93 S. Ct. 1917.) The reasons for such admission are (1) that testimony given under oath, in the presence of the accused and subject to cross-examination, is deemed to be trustworthy and reliable; (2) that the opportunity for cross-examination, if adequate when initially afforded, substantially complies with the purposes underlying the requirement of confrontation; and (3) that the introduction of the testimony is necessary to ensure that substantial justice is done (*Burton*).

In determining whether cross-examination in a given case is adequate, it has been observed that:

" 'Ordinarily, cross-examination at a preliminary hearing is subject to the general rule that it may not extend beyond the scope of the direct examination and such further interrogation as is directed to show interest, bias, prejudice or motive of the witness to the extent that these factors are relevant to the question of probable cause. Rule 411 provides that the criminal discovery rules "become applicable following indictment or information and shall not be operative prior to or in the course of any preliminary hearing," and clearly the preliminary hearing is not intended to be a discovery proceeding. In the absence of discovery procedures and in view of the limited nature of the evidence which may be introduced at a preliminary hearing, the question whether adequate opportunity to cross-examine had existed at the preliminary hearing [citation] may not depend in its entirety on what transpired at that hearing. Adequate opportunity to cross-examine means an opportunity to effectively cross-examine, and merely providing an opportunity to cross-examine at the preliminary hearing is not *per se* adequate opportunity.' [Citation.]

Thus, *opportunity* to cross-examine, in and of itself, is insufficient. [Citation.]

What, then, is an adequate opportunity to cross-examine? Although our research has not revealed a standard which is universally applicable, one central theme has emerged. No undue restrictions should be placed upon defendant's right to cross-examine [citations]; and defense counsel should be allowed to cross-examine the witness competently, vigorously, and comprehensively [citations]. In order to determine, therefore, if the accused has been given an adequate opportunity to confront and

cross-examine the witnesses against him, reviewing courts must carefully scrutinize the records before them." *People v. Behm* (1977), 49 Ill. App. 3d 574, 578-79, 364 N.E.2d 636, 639-40, *cert. denied* (1978), 434 U.S. 1077, 55 L. Ed. 2d 783, 98 S. Ct. 1268.

Regarding the standard of review in relation to the exercise of diligence in securing the witness' attendance at trial, it has been said that:

"It is the duty of the State's Attorney to supervise and coordinate efforts to locate witnesses known to be missing prior to trial and secure their presence at trial. Whether good-faith and reasonable diligence has been exercised in these efforts is determined on a case-by-case basis after a careful review of the facts and circumstances of each case. [Citation.] The State has the burden of proving that the steps it took to secure the presence of missing witnesses at trial were made in good-faith and were reasonable under the circumstances. [Citation.]" (*People v. Brown* (1977), 47 Ill. App. 3d 616, 621, 365 N.E.2d 15, 19.)

A review of the facts involved in two recent decisions are helpful in ascertaining whether such a search is reasonable. In *People v. Payne* (1975), 30 Ill. App. 3d 624, 332 N.E.2d 745, a search was found to be not diligent where a policeman voluntarily undertook to locate a witness who had a history of being difficult to find. The officer did not have certain information known to the State's Attorney including the witness' correct address, the identity of his former employer, the nature of his wife's employment, and the name of one of his companions. Additionally, the officer failed to keep records of the interviews he conducted concerning the whereabouts of the witness. It was held that "approval of [the] introduction of the former testimony under these facts would encourage laxity rather than diligence and desultory searches rather than systematic and coordinated efforts by the prosecution and whatever investigative arm it employs." (30 Illl. App. 3d 624, 630, 332 N.E.2d 745, 750.) However, in *Burton* the court found that a search was diligent where the State's Attorney assigned experienced staff investigators to locate missing witnesses and they not only contacted election officials and postal representatives but also visited and kept records of conversations with persons at the last known addresses of the witnesses.

Here, during the course of the preliminary hearing, Ruiz was cross-examined concerning the time and location of the incident, the number of people involved, the comparison of defendant's appearance to that of the offender in terms of dress, facial hair, and height, his description of the force employed and property taken, and the route of escape. The record does not disclose and defendant does not point to any information subsequently gleaned which would have altered or amplified the cross-examination of Ruiz at trial had he appeared. Under the circumstances,

we believe that an adequate opportunity to cross-examine Ruiz was afforded to defendant during the course of the preliminary hearing.

Regarding the unavailability of Ruiz, the record reveals that at the request of the State's Attorney, an investigator visited Ruiz's last known address but found his living quarters vacant and then attempted to ascertain the witness' whereabouts by consulting the landlord, a tenant, a neighbor, postal authorities, the police department, immigration officials, and the Secretary of State's office, to no avail. He also returned to the neighborhood on subsequent occasions but was unable to obtain any additional information. It appears that defendant does not deny that a reasonable search was conducted at that time; but, rather, he argues that the State's Attorney was derelict in failing to initially ascertain whether Ruiz was an illegal alien who was not likely to appear for the trial. The only factor in the record to support such an argument lies in the fact that Ruiz was non-English speaking which should not, in itself, raise any question of Ruiz's status with immigration authorities or foster any doubt as to his appearance at trial—particularly after he voluntarily attended the preliminary hearings of defendant and Torres, which were conducted on different dates. Considering all the facts and circumstances, we believe that the search was diligent. Accordingly, we conclude there was no error in the admission of the transcript of Ruiz's previous testimony.

Concerning defendant's final contention that his guilt was not proved beyond a reasonable doubt, we initially note that the jury which saw and heard the witnesses was in a superior position to assess their credibility, and its determination will not be set aside unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt (*People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576) and that testimony of a single witness, if positive and credible, is sufficient to support a conviction (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Miller* (1971), 2 Ill. App. 3d 206, 276 N.E.2d 395). Moreover, the testimony of a third person that he observed defendant employ force in taking the victim's property will support a conviction of armed robbery. *People v. Adams* (1974), 22 Ill. App. 3d 665, 318 N.E.2d 278; see also *People v. Was* (1974), 22 Ill. App. 3d 859, 318 N.E.2d 309.

■■ Here, the occurrence took place on a midafternoon in summer and, although the three men approached Ruiz from behind, he did have an opportunity to observe defendant as he pressed a weapon to his (Ruiz's) side before taking $15 and a watch from him. His testimony was corroborated by the arresting officer, who testified that from a distance of 100 feet he observed defendant and two companions, who were holding long shiny objects, knock Ruiz to the ground and restrain him and that one of them took his wristwatch while defendant and the other searched his pockets. Although he admittedly lost sight of the trio for a second or

two on at least four occasions during the chase, the officer testified that he recognized the three men he had ordered to halt as the same three he had observed assaulting Ruiz. The jury found the witnesses to be credible, and we cannot say that the evidence presented was so unsatisfactory as to raise a reasonable doubt of defendant's guilt.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.